## Alerding et al., Executors, v. Allison.

[No. 4,434.    Filed October 8, 1903.]

Accord and Satisfaction.—*Payment by Will.*—Plaintiff filed a claim against decedent's estate for $15,620 for services rendered during the life of decedent covering a period of eighteen years. There was evidence of an agreement to the effect that if claimant should remain in such employment until such time as she should marry, and faithfully perform her duties, she should receive by will or otherwise one-half of the estate, and if she should remain until the death of decedent, she should receive all of the decedent's estate. Decedent made a will giving her entire estate to others, ·

except her household goods and $500, which she gave to claimant, without reference to the agreement. *Held*, that the legacy was intended as a satisfaction of the debt, and the acceptance thereof by claimant amounted to a satisfaction of the debt. *pp. 398–404.*

EXECUTORS AND ADMINISTRATORS.—*Claims.*—*Payment by Will.*—*Estoppel.*—In the trial of a claim against a decedent's estate for services under an alleged contract to compensate claimant by will, no plea of estoppel was necessary in order to enable defendant to take advantage of the acceptance by the claimant of a legacy given her by decedent. *p. 404.*

From Marion Circuit Court (7,468); *Vinson Carter*, Special Judge.

Irene Allison filed a claim against the estate of Helen J. Tate, deceased, for services. From a judgment for plaintiff, defendant appeals. *Reversed.*

*D. J. Hefron, Charles Harrington, D. W. Howe* and *R. T. Byers*, for appellant.

*C. W. Smith, J. S. Duncan, H. H. Hornbrook, Albert Smith* and *Lafayette Perkins*, for appellee.

ROBY, J.—Appellee's claim was in two paragraphs. The first contained a bill of particulars as follows: The estate of Helen J. Tate to Irene Allison, Dr. To services from February 25, 1882, to December 18, 1889, as companion, housekeeper, cook, and nurse, 406 weeks, at $25 per week, $10,150. To services from December 18, 1889, to June 26, 1900, as companion, cook, adviser, housekeeper, and nurse, 547 weeks, at $10 per week, $5,470. Total $15,620. In the second, it was substantially averred that the appellee on February 25, 1882, entered the employment of Helen J. Tate under an agreement that if she continued in such employment until such time as she should marry, and faithfully perform her duties thereunder, she should receive by will or otherwise one-half the estate of which Mrs. Tate should die possessed; that if she remained in said employment until Mrs. Tate's death, she should receive by will or otherwise the entire estate; that on December 18, 1889, appellee intending soon to be married

and to quit said employment, Mrs. Tate promised that if
she would not quit such employment, but continue there-
under until her death, holding herself in readiness from
that time on, although married, to do and perform faith-
fully such services as she was able, which she might be
called upon by Mrs. Tate to do, appellee should receive
by will or otherwise the entire estate of which Mrs. Tate
should die possessed; that appellee should not be required
to live with Mrs. Tate, but could dwell elsewhere, and come
back and forth to her residence as often as she might be
needed or called upon; that, relying on said promises, ap-
pellee diligently, in compliance with said agreement, re-
mained continuously in said employment until the 26th day
of June, 1900, when Mrs. Tate died. Full performance
of said agreement on her part is averred, and that said
Helen J. Tate failed to carry out by will or otherwise
said agreement on her part, but, on the contrary, devised
and bequeathed most of her property, both real and per-
sonal, to other parties, except $500 and part of the house-
hold goods. "Claimant further says that the aforesaid serv-
ices rendered by her to said Helen J. Tate under said em-
ployment are reasonably worth the sum of $25 per week
for the 406 weeks from the 25th day of February, 1882,
to the 18th day of December, 1889, and $10 per week
for the 547 weeks from said 18th day of December, 1889,
to said 26th day of June, 1900, or $15,620 in all, which
sum claimant avers is justly due her from said estate and
wholly unpaid. Wherefore," etc. Answers to each par-
agraph of general denial, payment, and statute of limita-
tions. Trial by jury, verdict for appellee assessing her
recovery at $6,000, with answers to interrogatories. Judg-
ment on verdict. Error assigned is in overruling motion
for new trial.

The evidence shows that in November, 1881, appellee,
then fifteen years old, went to work in the Tate family
as a domestic at $3 per week. The Tates then lived on

a farm of several hundred acres near Indianapolis, and had in their employment a number of persons, both male and female. In February, 1882, Mrs. Tate asked appellee's mother to let her adopt the girl. The request was refused. The conversation following is relied upon to establish the contract set up. It was testified to by the mother and another daughter. The mother's version was as follows: "What did Mrs. Tate say? A. She said: 'Then I have another question to ask you. Would you be willing to let her remain here as one of the family, and I do for her like I would for my own child, and care for her, and clothe her, and give her spending money?' And I says: 'Well, if you take good care of her.' And she said: 'I will. I will take good care of her.' I said: 'She is young, and I have never put anything hard on her, and I do not want you to put anything hard on her.' Q. What else? A. She said another thing—that, 'If she lives with me until she is married I will give her half I have got, and, until my death, I will make her my heir.' Q. If she lived there until she was married she was to give her half of what she had? A. Yes, sir. Q. But if she remained until Mrs. Tate's death then she was to make her her heir? A. Yes, sir. Q. Is that right? A. Yes, sir. And if she died in the meantime she would put her in a nice spot in Crown Hill, and cover her with flowers." Appellee thereafter continued in the family, being treated as a member of it, but doing a great deal of work. On December 18, 1889, appellee left, and took lodging with Mrs. Grube in Indianapolis where she remained until the last of the following November, being married on March 27, 1890. She and her husband have since lived in the city, and have two children. In the fall of 1892 the Tates also moved into the city, locating about two miles from appellee. After this appellee visited them frequently, and it is fairly inferable from the evidence that she gave them attention such as a daughter might have done, but not to

Alerding *v.* Allison.

have been expected, in view of their various aliments, from one not sustaining such relation. Lizzie Billips, a colored woman who had worked for the Tates some time, testified that she was called into a room at their residence after appellee had left, but before her marriage, and overheard a conversation, which she gives as follows: "A. I heard Mrs. Tate say if Mr. Allison would agree to let her come back—backwards and forwards—as long as she was alive, that she would not give her anything when she got married, but she would give her something at her death. She expected to leave her so that she would not want for anything any more, if he would agree to let her come. Q. Did they agree to it? A. Yes, sir, he did. * * * A. What I told you this morning. Mrs. Tate said that she was willing for Mrs. Allison and Mr. Allison to get married if she would come back and forwards—come to her beck and call; that was Mrs. Tate's words. * * * A. She said she would not give her anything when she was going to get married, but she would give her something at her death." There was evidence of various statements made by Mrs. Tate to the effect that she intended to provide for appellee in her will; that she would leave her well fixed so that she would not have to work any more; that she intended to pay her for what she had done and that it would be all hers anyway. None of the expressions so testified to contained any direct allusion to any contract or agreement upon her part to make such a disposition.

Mrs. Tate left at her death a will, containing thirty-three specific items, the thirty-fourth one naming her executors. By this will she disposed of all her property, inventoried at $54,041. The fifteenth item thereof was as follows: I give and bequeath to Irene Allison, wife of James Allison, all the furniture, carpets, pictures, ornaments, utensils, and other household articles of every description in my residence and not otherwise in this will specifically

bequeathed to other legatees." The twenty-sixth item was as follows: "I give and bequeath to Mrs. Irene Allison, the same mentioned in item number fifteen of this will, the sum of $500." Before the claim in suit was filed appellee received and receipted for the articles described in item fifteen, appraised at $310. It thus appears that Mrs. Tate did make a testamentary provision for appellee. Appellee claims that the contract required a larger one. Had the provisions made been in accord with the alleged agreement there would, of course, be no room for recovery of the reasonable value of services rendered thereunder. *Eaton* v. *Benton,* 2 Hill 576, 578.

The general doctrine of satisfaction by legacy is that when one, being indebted to another, gives him by will a sum of money as great or greater than the debt, without saying anything about it, this shall nevertheless be a satisfaction of the debt. Pomeroy, Eq. Jurisp. (2d ed.), §527. The exceptions to this rule are stated by appellee's learned counsel, and are so numerous as practically to make the rule an exception to the exceptions. In the case at bar the general doctrine is not applicable. The distinction and the rule that is applicable are stated by Mr. Pomeroy as follows: "The general doctrine as to a presumption of satisfaction, and the limitations upon it, described in the foregoing paragraphs, are based upon the bare facts of a debt and a legacy, upon their respective natures, and upon the relative situation of the testator and the creditor-legatee; and they assume that there is no express language in the will, accompanying the legacy, and declaring its object and effect, or no previous arrangement between the parties stamping a special character upon the testamentary gift. It is therefore well settled that if one person renders any services to another upon an understanding or arrangement that he is to be remunerated therefor by a testamentary benefit, and the party receiving the services afterwards makes a bequest or devise in his will in favor of

the other, which is in its amount and value a reasonably sufficient compensation, such testamentary provision is a satisfaction, and the creditor party can not enforce his demand as a debt by an action against the estate. It would seem that, under these circumsances, the creditor party would not even have an election, since he had agreed to look to the testamentary benefit alone for compensation. This result, however, must evidently depend upon the terms of the original agreement, in pursuance of which the services were rendered. Wherever, also, there being an existing indebtedness, it is agreed between the parties, either expressly or impliedly, that it shall be paid by some benefit bestowed in the debtor's will, and a testamentary provision is subsequently made in favor of the creditor, which he accepts, his demand will thereby be satisfied; he can not both take the bequest and enforce his debt as a subsisting claim against the estate. In this, however, the creditor has an election either to accept the bequest in satisfaction of his preëxisting demand, or to renounce the gift and enforce the demand." Pomeroy, Eq. Jurisp. (2d ed.), §538.

That the agreement was to pay appellee by a testamentary provision is asserted by her. A testamentary provision for her has been made. She has availed herself of it. Had the will contained a recital that the bequest made was intended to be in full for all claims or debts, accepting the legacy would amount to a satisfaction of the claim. *Rose* v. *Rose,* 7 Barb. 174. The intention that it shall be so taken appears in this case both upon the face of the will and from the facts exhibited in connection therewith. If the legacies were not thus intended, the testator is placed in the position of attempting the impossible—of making bequests to various persons, knowing that appellee held an unsatisfied contract entitling her to the entire estate. Deficiency of assets requires that a legacy be construed as a satisfaction. Toller, Executors, 338; 2 Williams, Ex-

ecutors (7th Am. ed.), 615; *Cuthbert* v. *Peacock,.* 1 Salk. 155.

The conversation testified to by Mrs. Billips, and also relied upon as establishing appellee's contract, does not tend to show that either party to it understood that upon her marriage appellee became entitled to one-half of the estate of Mrs. Tate at her death. In view of the verdict, it must be at this stage of the case taken as established that such contract did then exist, and that at the death of Mrs. Tate, appellee was entitled to the entire estate. The evidence nevertheless tends to show that such liability was denied by Mrs. Tate, or perhaps it is better to say that it was not in anywise admitted. That the legacy could be in addition to what appellee was by contract entitled to recover is impossible. The situation occupied by Mrs. Tate when the will was made, and her attitude toward the contract, and the terms of the contract, negative the idea that the legacy given was intended to be in addition to the contract obligation; and the appellee, having elected to take such legacy, can not be permitted thereafter to claim additional compensation. The contract being within the statute of frauds was not enforcible. · *Wallace* v. *Long,* 105 Ind. 522, 531, 55 Am. Rep. 222.

The action is brought to recover the value of what it is alleged was done by one party to it in reliance upon the contract, the other party having refused to perform. *Wallace* v. *Long, supra,* 526. The making of such contract and its violation by Mrs. Tate are averred in the complaint. The allegation as to its violation was not well made, but assuming it to be sufficient, it follows that proof of such facts by the appellee in the first instance were essential. No plea of estoppel was therefore necessary to enable the appellants to take advantage of the satisfaction of said contract, they thereby negativing that which it devolved upon the appellee to prove. §380 Burns 1901.

It follows that the judgment should be reversed, and it is so ordered. Cause remanded with instructions to sustain motion for new trial and for further proceedings.