[1] Reported in 292 N.W. 96.
This appeal relates to a claim against the estate of May Cooke, deceased, which Kalseheuer filed in probate court for the sum of $10,825, all but $25 of which was alleged to be for services rendered the deceased between September 9, 1931, and September 9, 1937. The probate court disallowed the claim, and on appeal to *Page 438 
the district court issues were framed for a jury, which allowed the claim at $2,125. The case comes here upon appeal on behalf of the estate and the residuary legatees, who claim that the verdict was excessive and not justified by the evidence as well as that there was error in the charge.
May Cooke and her husband, Urban Cooke, were, prior to 1919, residents of South Dakota, where they were acquainted with Kalscheuer, who was then a young boy. Kalscheuer moved to St. Paul in 1897 and ever since 1917 has been in the banking business as an employe of the Commercial State Bank or City Bank of St. Paul. The Cookes were substantial depositors in the Commercial State Bank, carrying a balance which was usually $5,000 or more. At the time of her death (September 9, 1937) Mrs. Cooke held certificates of deposit in that bank amounting to $4,500 and had an open checking account of $3,200. Urban Cooke died November 11, 1936. At that time most of the Cooke property was held in joint tenancy with right of survivorship and was valued at approximately $53,000, the largest item of which was invested in 176 shares of Northern States Power Company stock which paid a six per cent dividend. There was a 720-acre farm in Spink county, South Dakota, a homestead residence at 1015 Van Slyke avenue in St. Paul, and a house at 1009 on the same avenue. After her husband's death Mrs. Cooke transferred the Northern States Power Company stock and other properties so that her estate was appraised at $25,005.14.
While there is little dispute that the Commercial State Bank invited the customers to consult its officers with reference to their investments, for which consultation no charge was to be made, it was conceded by appellants on the oral argument that there is sufficient evidence in the record to sustain a finding that services of that character were rendered by Kalscheuer to the Cookes and, after her husband's death, to Mrs. Cooke upon assurances that such services would be compensated for by a testamentary disposition by the surviving spouse. In fact it was contended that *Page 439 
the record compelled such a finding. In her will Mrs. Cooke bequeathed to Kalscheuer a note secured by first mortgage on certain property in St. Paul, "said Henry Kalscheuer having been a close friend of both my late husband and myself." The amount of the note was $2,000, which was subsequently paid. She also left $1,000 cash to Kalscheuer's wife, "in recognition of her valued friendship and many acts of kindness." Altogether she left $12,600 in cash bequests, including the $1,000 to Mrs. Kalscheuer, and by specific devise she also disposed of all her real property, giving to Walter A. Peterson, a foster child, the 720 acres in Spink county as well as a cash bequest of $1,000. She acquitted Arnold Sidmore and her husband's brothers Nelson Cooke and Frank Cooke of any indebtedness which they might be owing her on contracts for deed or otherwise. She named two residuary legatees. She named Kalscheuer as one of her executors, whom she charged with the duty of seeing that her body was buried beside that of her late husband at Maneno, Illinois.
1. It is argued by the appellants that the legacy to the claimant was, as a matter of law, a payment either in full or in part of any claim he might have against the estate for services rendered. In his statement of the claim Kalscheuer asserted that it was agreed that he should be paid by the survivor or from the estate of the survivor. Claimant himself could not testify as to any conversations with either of the decedents, but his wife and Arnold Sidmore, who also made claim for services against the estate, testified in his behalf. Sidmore testified that Mrs. Cooke and her husband had previously said that Kalscheuer would be well paid for what he had done when she was through with her property and that she was going to make a will, that Kalscheuer and Sidmore were the ones who had stood by them and were to be well paid. On one occasion the Cookes had shown Sidmore a slip or memorandum on which there was a statement as to how they were going to have the will prepared to dispose of their property and that on this statement there was an item of $8,000 to $12,000 in the bank that was to go to Kalscheuer for the services he had *Page 440 
rendered. Mrs. Sidmore corroborated her husband to some extent. Mrs. Kalscheuer testified on behalf of her husband that both of the Cookes had stated to her or in her presence that they wanted her husband to have the bulk of their estate, and that in the last week in April, 1937, Mrs. Cooke said to her: "Urb and I have always agreed that Henry should share in the bequest of our estate, and I wanted it that way." Mr. Edward Bremer testified that the Cookes had told him that they intended to leave Kalscheuer $10,000 in their will. Shortly after the conversation with Mrs. Cooke in April, Kalscheuer engaged a lawyer to draw a will for Mrs. Cooke in which he was made residuary legatee. This will was executed, and Kalscheuer paid the lawyer's fee with his own personal check. We are convinced by the record that the evidence compels a finding that Mrs. Cooke and her husband promised to compensate Kalscheuer by testamentary disposition and that he so understood and consented to the arrangement. This raises a question not heretofore passed upon in this state by this court, namely, whether under such circumstances the so-called pro tanto rule should be applied. That rule is to the effect that where services are rendered upon the understanding that they are to be compensated for by testamentary disposition, the value of a legacy, unless otherwise stated in the will, shall be applied upon the reasonable value of such services either in full satisfaction or pro tanto as the case may be.
We think the rule is a just one and adopt it. Reynolds v. Robinson, 64 N.Y. 589, 593; In re Mason's Will, 134 Misc. 902,236 N.Y. S. 720; Kujawski v. Sobelewski, 72 Pa. Sup. 326. If anything were needed to compel the conclusion that both Kalscheuer and Mrs. Cooke clearly understood that Kalscheuer was to be compensated by testamentary disposition, the arrangement made by Kalscheuer for the drafting and execution of the will which made him a residuary legatee of her estate would have supplied the lack. We discover no contrary intent in the language of the will. Not without interest is the fact that in his petition to admit the will to probate he stated that there were no *Page 441 
debts. The trial court erred in not charging the jury in conformance with the rule we adopt. It was requested to do so by the appellants.
2. It is the further contention of the appellants that the verdict is excessive and not justified by the evidence. Kalscheuer's claim for services was on the basis of $150 per month for the six-year period. At no time did the income of the Cookes aggregate more than $250 a month. It must be conceded that the investment in Northern States Power Company stock needed no attention whatever. As we have seen, the bank invited customers to confer with its officers about their investments. Kalscheuer kept no record of the services rendered and could segregate no items for which he could make a charge. He attended five or six meetings in connection with the Savage Company receivership and wrote as many letters in that connection; he arranged the sale of the South Dakota farms to their foster son, Walter Peterson, but would not say or could not say what would be a reasonable charge therefor. He collected the rent on the residence property near the Cooke's homestead for the period of one year. There is no satisfactory evidence that he performed any services in connection with the Schneider contract. He looked after five or six mortgages and probably deserves more compensation for this service than for anything else he did for the estate, but their aggregate amount was only about $10,500. The normal charge of a trust company for such service would not exceed $65 per year. The Home Owners Loan Corporation bonds required no effort whatever on his part. The property which was transferred by Mrs. Cooke does not seem to have required any special attention. It is true that he testified that he conferred with the Cookes or one of them on an average of a couple of times a week and that he investigated various proposed investments, but on this record we deem the verdict excessive and could not sustain any amount in excess of the legacy left to Kalscheuer. The motion in the lower court was for a new trial only. The order denying it must be and is reversed.
Reversed. *Page 442