James E. Slover and Thomas A. Slover,

*Plaintiffs and Appellants*

vs.

Earl E. Harris and B. E. Harris, Executors of the Estate of John Elmer Harris, Deceased; Clarence D. Harris, Marie Bistle, Quinter C. Harris, Marie Bistle, Quinter C. Harris, Earl E. Harris, Willard V. Harris and Blanch E. Harris; Curtis Harris Cremer and Eva Cremer Wilson; and Iva M. Harris,

*Defendants and Respondents.*

(No. 2756; September 10, 1957; 314 Pac. (2d) 953.)

For the plaintiffs and appellants the cause was submitted upon the brief and also oral argument of Alfred M. Pence of Laramie, Wyoming.

For the defendants and respondents, Curtis Harris Cremer and Eva Cremer Wilson, the cause was submitted upon the brief of Corthell and King of Laramie, Wyoming and oral argument by Mr. John A. King.

Heard before Blume, C.J., and Harnsberger, J., and Harkins, D.J.

302

## OPINION

District Judge HARKINS delivered the opinion of the court.

John Elmer Harris and Grace A. Harris were husband and wife for many years. Grace died on July 21, 1953. John Elmer Harris married the defendant Ivah M. Harris on June 19, 1954. On June 28, 1954, John died leaving an estate consisting of real estate valued at $62,266.58, livestock valued at $38,706, and money and other personal assets valued at $82,948.99, or a total estate of $183,921.57, as shown by the inventory and appraisement. John Elmer Harris, hereinafter usually referred to as testator, left a will substantially as follows:

"* * * That I John Elmer Harris * * * do make, publish, and declare this my Last Will and Testament, hereby revoking any and all Wills * * * by me heretofore made.

### I

"I direct that my body be decently buried * * *.

### II

"I direct that all my just debts and funeral expenses be paid * * *.

## III

"I give devise and bequeath unto Clarence D. Harris * * *; Quinter C. Harris * * *; Earl E. Harris * * *; Williard V. Harris * * *; and Blanch E. Harris * * *; my brothers the sum of One Hundred dollars * * *; and to my sister Marie Bistle * * * the sum of One Hundred dollars * * *.

"I make this bequest being mindful of my relationship and estate, realizing that they are amply able to care for themselves and have not, in any way, assisted me or my late wife in accumulating such property as I may possess at the time of my death.

## IV

"I give devise and bequeath unto Curtis Harris Cremer, my nephew and Eva Cremer Wilson, my niece, and their heirs * * * children of my late sister * * * all my estate of whatsoever nature or kind share and share alike, reserving however therefrom a life estate to James E. Slover and Thomas A. Slover as set forth in the following paragraph.

## V

"I give devise and bequeath unto James E. Slover and Thomas A. Slover, or the survivors of them, share and share alike, a life estate in all of my ranch property situated in Albany County, Wyoming; together with the livestock thereon and all ranch equipment, household goods and accessories; and charge them with the duty and responsibility to promptly pay all taxes, assessments of every kind that may be charged against said ranch property, and the punctual payment of all debts and obligations incurred by them, so that said life estate may not, in any way, be jeopardized; and in event they shall neglect, fail or refuse to pay any of the above obligations that then, in that event, the interest herein devised shall cease and the remainder-

men shall be entitled to accelerate their right of title and possession and,

## VI

"I give devise and bequeath, in addition, to James E. Slover and Thomas A. Slover, all livestock that I may possess at the time of my death subject to the following conditions; that said herd of cattle or sheep or both, shall be maintained at the approximate number at all times and in order that they may be able to operate said ranch in a proper manner, I do hereby give * * * them the sum of Five Thousand dollars * * * each for their personal expenses and the expense of operating said ranch until returns may be obtained therefrom, and

"In addition I charge James E. Slover and Thomas A. Slover with the duty and responsibility of operating said ranch in a husband like manner, looking after and caring for said livestock in a ranchman's like manner, and if they should neglect, fail or refuse to properly operate said ranch and livestock then their interest hereby created shall cease and the remaindermen shall be entitled to immediate possession and title * * *.

"Reserving, however, therefrom one-half (½) of the mineral leases, bonuses, and rentals.

## VII

"In order that there may be no misunderstanding as to my intention, I give devise and bequeath unto Curtis Harris Cremer and Eva Cremer Wilson, aforesaid, all of the rest, residue and remainder of my estate of whatsoever nature or kind, including any and all personal effects or jewelry of my late wife, Grace or myself, share and share alike, and charge them with the personal responsibility of dividing the personal effects amicably between them, and all known or unknown

property of which I may be entitled at the time of my death.

## VIII

"I hereby direct that all inheritance taxes be paid from the rest, residue, and remainder of my estate and that the devises herein made, shall be net and clear of all taxes.

## IX

"I hereby appoint * * * Earl E. Harris * * * and Blanch E. Harris * * * executors."

The will, dated December 8, 1953, was admitted to probate and defendants Earl E. Harris and B. E. Harris were appointed executors. Plaintiffs, James E. Slover and Thomas A. Slover, devisees of the life estate in said will, presented a claim against the estate and upon rejection commenced this action naming the executors, the other beneficiaries under the will, and Ivah M. Harris as defendants. Defendant Ivah M. Harris, widow of testator, settled the case after the trial concluded, but before judgment was rendered. Consequently she is not involved in this appeal.

Plaintiffs' petition states three alternative causes of action. The first cause alleges in substance: That in the fall of 1925, the testator and his wife Grace A. Harris orally agreed with plaintiffs that if plaintiffs would stay with them, work on and operate their ranch for the lifetime of the Harrises, without compensation other than the necessities of life, in consideration thereof the Harrises, who were childless, would treat plaintiffs as sons, and would upon death will all of their property to plaintiffs as their absolute property, to which proposal plaintiffs agreed; full performance by plaintiffs together with facts supporting the

allegation; the making of a joint and mutual will by the testator and Grace A. Harris on January 14, 1947, and the probate thereof upon the death of Grace A. Harris; that the testator's will is invalid because it (1) violates the joint and mutual will aforesaid, and (2) because it is in violation of the alleged oral agreement. The first cause sets out also that testator's will was admitted to probate in the District Court of Albany County, Wyoming, on July 31, 1954, and the prayer is that the will be declared invalid, and that the oral agreement be specifically enforced by impressing a trust on the property.

In their second cause plaintiffs claim damages for breach of the oral contract to the extent of the value of the estate property, and in the third alternative cause, in the nature of quantum meruit, they claim the reasonable value of their services alleging that the value is not measurable by pecuniary standards, "but which was of the value of $150.00 per month, or more, together with interest thereon," totaling $221,400.

Defendants Cremer and Wilson, the only defendants involved in this appeal, generally denied the allegations on the first two causes of action and affirmatively alleged, as to the third cause, that plaintiffs were compensated under testator's will.

Plaintiff James A. Slover was called as a witness, and following a few preliminary questions counsel for defendant Ivah M. Harris objected to any "testimony from either plaintiff as to any transaction with John Elmer Harris or Grace A. Harris during their lifetimes. We think that the statute presents an absolute disqualification of a party to testify." The court immediately overruled the objection. Argument on the law ensued, with counsel for these defendants actively

participating, resulting in a ruling as follows: "The objection will be overruled subject to reconsideration by the court at a later time. If I find during review of the matter, prior to the decision, that I think the evidence has been wrongly admitted, I will so state and so hold; but subject to that we will proceed."

In the judgment entered, the trial court ruled that "Section 3-2603, W.C.S. 1945, prohibits Plaintiffs from testifying in the cause, and renders the testimony of each of the Plaintiffs incompetent." Further that the incompetency "is not waived by the interrogatories and answers thereto, filed but not introduced as evidence in this case; and the testimony of Plaintiffs is hereby stricken." The court found against the plaintiff on the first two causes adjudging as follows:

"Plaintiffs, if they elect not to take under the will * * * heretofore probated in this County, shall have and recover from the estate * * * and from the interests of each of the parties hereto in said estate, as full and complete settlement to June 28, 1954 * * * of all their rights in and to the said estate, the sum of * * * $127,294.80 * * *. Plaintiffs, if they elect to take under the will * * * heretofore probated * * * shall be deemed to have, by the acceptance thereof, received payment for their services * * *."

Plaintiffs appeal claiming in substance that the court erred in not finding for them on the first two causes of action, and in requiring them to elect. Many questions are raised and extensively briefed and argued by the parties. We shall dispose of them in the order presented. Plaintiffs claim error in the striking of testimony. Section 3-2603, W.C.S. 1945, reads:

"A party shall not testify where the adverse party is * * * an executor or administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person, except:

"1. To facts which occurred * * * subsequent to the time the decedent * * * or testator died.

* * * *

"Nothing in this section contained shall apply to * * * actions or proceedings involving the validity of a deed, will or codicil * * *."

Plaintiffs' theory is that the validity of testator's will is involved and that consequently the last paragraph of the statute, hereinafter for convenience called the proviso, renders the first paragraph inapplicable. We think that the real meaning of the proviso and particularly the word "validity" as used therein is made clear by the position plaintiffs have taken in this case. This is, without doubt, a civil action, and it was commenced November 19 ,1954. Plaintiffs' pleading, as well as the record, show that testator's will was admitted to probate on July 31, 1954. "* * * a proceeding to revoke the probate of a will is not a civil action, but a proceeding provided for in our Probate Code." Merrill v. District Court of Fifth Judicial Dist., 73 Wyo. 58, 272 P.2d 597, 598. The trial court was without jurisdiction to pass upon the validity of the will, as will be seen. Peculiarly enough plaintiffs asked the court below to pass upon the validity of the will, but at the same time set forth in their pleadings facts showing the probate thereof. Does the probate of the will mean anything? In State v. McGlynn, 20 Cal. 233, 81 Am.Dec. 118, the court held that a will admitted to probate must be recognized to be valid so long as the probate stands, and in the syllabus, concisely summing up the court's reasoning, it is stated:

"Reason that decree admitting will to probate is conclusive as to validity of will upon all persons and all courts is, that the probating of a will is not a proceed-

ing to decide a contest between parties, but a proceeding in rem, to determine *the character and validity* of an instrument affecting the title to property, and which it is necessary for the repose of society should be definitely settled by one judgment." (Emphasis supplied.) In 57 Am.Jur. § 934, p. 614, it is stated:

"A judgment or decree of a court with jurisdiction of a proceeding to probate a will, which admits the will to probate, is conclusive of the validity of the will; it is not subject to collateral attack, but stands as final, if not modified, set aside, or revoked by a direct proceeding, or reversed on appeal to a higher court."

To the same effect see 57 Am.Jur. § 932, p. 613; 68 C.J. 1228. In this state wills are probated or contested in the district court under a jurisdiction separate and distinct from its jurisdiction in a civil action or in equity, and will contests are special proceedings provided by statute in which the legal status, the legal existence and the legal sufficiency of the written instrument is determined. Fisher v. Superior Court in and for Ventura County, 23 Cal.App.2d 528, 73 P.2d 892; In re Plaut's Estate, 27 Cal.2d 424, 164 P.2d 765, 162 A.L.R. 837; In re Baker's Estate, 170 Cal. 578, 150 P.989.

It is true, as plaintiffs assert, that a recovery on their contract would affect the operation of the will. The same would be true if recovery is had on the quantum meruit. In fact it would seem that almost any conceivable claim established against the estate of a testator would, ordinarily at least, deplete and diminish the property of the estate, and thus affect the operation of the will. But we do not think that the validity of the will would be affected in the sense that the term is used in § 3-2603, W.C.S. 1945. To adopt plaintiffs' theory we would have to hold that the first paragraph of the statute makes parties incompetent to

testify against an executor or administrator of a decedent's estate, but that the last paragraph or proviso nullifies the first where there is a will. Such an anomalous result was not intended by the enactors of the statute:

It may be noted in § 6-402, W.C.S. 1945, relative to will contests, that questions to be submitted to the jury are: "(4) Any other questions substantially affecting the validity of the will * * *." The court, In re Elliott's Estate, 22 Wash.2d 334, 156 P.2d 427, 438, 157 A.L.R. 1335, in considering a statute similar to § 6-402, supra, commented:

"Furthermore, it is now our considered opinion that the term 'validity,' as used in that clause in Rem.Rev. Stat. § 1385, reading 'or for any other cause affecting the validity of such will,' has reference only to the genuineness or legal sufficiency of the will under attack, raising the question whether the will is legally sufficient in form, contents, and compliance with the statutory requirements as to execution; it does not relate to the operative effect of the will or the period of its operation."

In Wolf v. Powner, 30 Ohio St. 472, 479, the court in discussing the so-called deadman's statute reasoned that the first paragraph of the statute would not be applicable on the issue of devisavit vel non, where the issue is will or no will, even in the absence of the proviso, and then stated: "But to prevent any misconstruction of language * * * its true construction was, through abundant caution, declared by way of proviso."

We think that the "validity" of the will in question has been established in the probate court. Further that the term as used in the statute in question insofar as it pertains to wills and codicils has reference only

314

to the genuineness or legal sufficiency of the instrument, and does not relate to the operative effect of the will. See 58 Am.Jur. §§ 230, 233, pp. 154, 156; Annotation, 115 A.L.R. 1426, et seq.; 70 C.J. 225.

Defendants annexed interrogatories to their answer, but the answers were not read or introduced at the trial. They did not touch upon the actual making of the alleged oral contract. Plaintiffs contend that by so doing the defendants waived the so-called deadman's statute, thus making plaintiffs competent. There are authorities, of course, holding both ways on the point. 97 C.J.S. § 243, p. 728. The primary purpose of interrogatories, as permitted by statute, §§ 3-1503— 3-1505, W.C.S. 1945, is to aid a party in pleading and preparing his case, and they are designed to serve as an economical and expeditious means of discovery, pleading and preparation. Their use in evidence is but incidental to the primary purpose. Schuldt v. Associates Inv. Co., 61 Ohio App. 213, 22 N.E.2d 572; Ward v. Mutual Trucking Co. 22 Ohio Iaw Abs. 636; Chapman v. Lee, 45 Ohio St. 356, 13 N.E. 736. Section 3-1505, W.C.S. 1945, relating to answers to interrogatories reads so far as material here that " * * * on the trial such answers, so far as they contain competent testimony on the issue or issues made, may be used by either party." Thus the answers to interrogatories are not ipso facto evidence in the case. In Prince v. Abersold, 123 Ohio St. 464, 175 N.E. 862, in a suit brought by two sisters against an executrix to recover the reasonable value of support, nursing care, etc., given by plaintiffs to a deceased sister, and wherein the executrix took plaintiffs' deposition and filed the same, but neither party offered them in evidence, the supreme court ruled, "That the better and safer rule is that the mere filing of a deposition taken of an adverse party does not waive the inhibition of the sta-

tute against the testimony of the party whose deposition has been so taken." See In re Renee, 159 Ohio St. 37, 110 N.E.2d 795, to the same effect. Pink v. Dempsey, 350 Ill. App. 405, 113 N.E.2d 334, 336, 338, cites Prince v. Abersold, supra, with approval and makes a rather comprehensive review of the cases on the point. The claimant in the Illinois case relied on an oral contract with decedent to leave a will giving claimant all his property in consideration of services. The estate took the pretrial deposition of the claimant and interrogated her as to all phases of her claim, but it was not filed, offered, or put in evidence. The court, holding that there was no waiver, said in part:

"Pretrial discovery is designed to permit exploration and to avoid surprise. It is like a proceeding for the filing of interrogatories, or, perhaps, a comprehensive bill of particulars. It is directed toward making the judicial process one of determining the facts appertaining to the issue and rendering a just decision thereon, rather than the promotion of a battle of wits between counsel.

\* \* \* \*

"This is in effect urging the set-off of what appears to be a tactical advantage against a long established statutory policy. The pre-trial discovery proceeding was open to claimant. She had knowledge of all the facts concerning her case before the estate had. True, she could not examine the decedent, but she could have examined in advance of the trial any or all of the witnesses who appeared on behalf of the estate, and procured, if such there were, witnesses who would have controverted the testimony of the estate's witnesses. Whatever disadvantage there was to claimant was that which is inherent in all pretrial discovery examinations. If the court had sustained claimant's position, she would have had an open field in testimony relating to all the personal and almost conjugal aspects of her relationship with the decedent. He could not have been returned to life to testify to the contrary."

See cases cited in 97 C.J.S. p. 728, n. 56; Clayton v. Ogden State Bank, 82 Utah 564, 26 P.2d 545; Maldaner v. Smith, 102 Wis. 30, 78 N.W. 140; In re Schulman's Estate, 189 Misc. 672, 72 N.Y.S.2d 239; Anderson v. Benson, D.C., 117 F.Supp. 765.

In this case the responses to the interrogatories are not in evidence nor were they offered. The parties, so far as we can see, have in no way been affected by their use. There is no real or apparent or just reason for the court to hold that anyone has been prejudiced in the slightest degree by the mere fact that they were taken. Accordingly we hold that the trial court ruled correctly on this point.

Plaintiffs further contend that the defendants waived the incompetency by cross-examining beyond the scope of direct examination. They point to over fifty questions put to plaintiffs as going beyond direct examination. We have carefully examined the questions and are unable to wherein or in what respect the questions complained of exceeded the bounds or scope of direct examination, and plaintiffs have pointed to nothing specific in their objection. Under these circumstances we are not warranted in unnecessarily prolonging a necessarily long opinion by pointing out why the questions were within the scope of direct examination.

It is next contended that there was no objection to the competency of James E. Slover by defendants Cremer and Wilson, the only respondents in this court. This question was not raised until the case reached this court. It will be remembered that counsel for Ivah Harris objected and the court immediately overruled, being then of the view, as the court later expressed it, that the proviso in the statute rendered the witness

competent. Counsel for defendants on this appeal indicated then that the matter had been previously gone into on a demurrer. He called the court's attention to to the fact that defendants had demurred on grounds that there was an improper joinder of causes and that the court had no jurisdiction of the subject matter. He called attention to the order of the court overruling the demurrer, which order recited that "having indicated that his action is in no sense a will contest * * * that Plaintiffs do not claim that the said will of deceased to be 'invalid' as to any persons other than Plaintiffs; that Plaintiffs desire the said will to be probated." Counsel then stated to the court: "It may be that in the light of this order you might change the ruling." The fact is, that following more argument the court did change the ruling as hereinbefore stated. From that point on until the case reached this court, the record affirmatively shows that the plaintiffs, the court, and all the defendants understood that the respondents were objecting to the competency of the plaintiffs under the statute. The case was tried upon the theory that the competency was questioned and was decided upon that theory as the judgment shows. True, counsel did not use the term "objection" but he made it clear that he was objecting. The record is conclusive as to that. The purpose of the objection is well known. 88 C.J.S. § 123, p. 245; 53 Am.Jur. § 134, p. 117; 88 C.J.S. § 124, p. 248; 1 Wigmore, 3d Ed., § 18, p. 322; 3 Am.Jur. § 257, p. 39.

Plaintiffs next claim that all of the evidence should not have been stricken. The statute did not, of course, render them incompetent as to facts occurring subsequent to death of decedent. In their brief plaintiffs direct our attention to evidence subsequent to testator's death. All of the evidence is, of course, before us. James A. Slover testified that he paid the taxes on

his homestead since testator died, and a building that was on the Harris place when he went there is still there.  This testimony has no probative force on any issue in the case so far as we can discern.  It is particularly urged that when James Slover's testimony was stricken it took with it their exhibits 7, 8, 9, 10, and 11.  Exhibit 7 purports to be a bill of sale covering 200 cattle, dated December 16, 1952, from the Harrises to J. E. Slover, effective on the Harrises' death; exhibit 8, of same date, is a similar bill of sale of all machinery with the note that "our will provides that you and Tom get all of our property of every kind and nature," and effective upon the death of the Harrises; exhibits 9 and 10 were checks, dated December 18, 1952, both payable to James E. Slover, one for $14,000, the other for $15,000; exhibit 11 is a check dated October 12, 1953, signed by testator payable to James E. Slover in the sum of $6,000.  Exhibits 9 and 10 purport to be signed by both Harrises.  All of these exhibits were to take effect upon the death of the Harrises.  These exhibits are in a mutilated condition and were put together by the plaintiffs after finding the same in the furnace in the basement of the Harris home.  They obviously had been torn to pieces. The only competent testimony with respect to these exhibits is in that of James E. Slover, who testified that he found them in the furnace in the basement of the Harris home; that they were mutilated and they, the brothers, put them together.  Their probative value is inconsequential under these circumstances.  Additionally, as will be seen, there was actual evidence that the Harrises made wills in which these plaintiffs were named as beneficiaries.  In fact three wills name them as beneficiaries.  Under the conditions the striking of these exhibits could in no way prejudice the plaintiffs' case.  Thomas Slover testified that he was present when the pieces of the exhibits were put together; that

he was married since the death of the testator, and he learned of the existence of the will after testator's death. The striking of this evidence was not prejudicial.

Although plaintiffs maintain that the evidence warrants a recovery on their first cause of action, even in the absence of the stricken testimony, they state that "certainly when the court struck their testimony, it struck vital testimony, because, except for the admissions, testified to by many witnesses of John Elmer Harris and Grace A. Harris as to their arrangement with the plaintiffs, the only testimony as to the actual contract made in the fall of 1925 was that of the plaintiffs, and when that testimony was stricken, the very heart of the plaintiffs' first cause of action was materially affected." Plaintiffs' statement is unquestionably correct. As already indicated the trial court found against the plaintiffs on the alleged oral contract. The light in which the evidence is reviewed here is well known. Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580; Tompkins v. Byrtus, 72 Wyo. 537, 267 P.2d 753. If there is substantial evidence to support the finding of the trial court, the finding will be upheld. Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487. Additionally, in a case on an oral contract to make a will, the party seeking to establish the contract has a heavy burden. In 94 C.J.S. § 113 (2), p. 868, the rule is stated:

"Courts accept with caution and examine with scrutiny evidence offered in support of a contract to make a disposition of property of a deceased person different from that provided by law. * * * A high order of proof is required to sustain such contracts, and the claimant is held to a strict proof thereof, and the evidence must establish that the minds of the parties met on definite terms."

See 57 Am.Jur. § 185, p. 164; Gray v. Marino, 138 W.

Va. 585, 76 S.E.2d 585; 69 A.L.R. 167, et seq.; 106 A.L.R. 742. In Clark v. Clark, 74 Utah 290, 279 P. 502, 504, the court said:

"The plaintiff, in declaring specific performance of an oral contract must establish the terms thereof with a greater degree of certainty than is required in an action at law, and he must show a clear mutual understanding and a positive agreement of both parties to the terms of the contract."

See also 69 A.L.R. 48, et seq.

Some 515 pages of testimony show that the evidence bearing on the question of the oral contract was, in condensed form, as follows:

1. That the plaintiffs worked faithfully and industriously from 1925 to decedents' death, receiving board, room, clothing, spending money and the necessities of life, but no wages.

2. The admissions of John Elmer Harris and Grace A. Harris which, stripped of inconsequential verbiage, are related by the named witnesses as follows:

Ray Harris. "Well, * * * (Elmer Harris) got talking about the boys and something was said about what was going to happen and now they were getting along, you know, and 'things was already fixed to take care of the boys.' * * * He said: 'I got the things all fixed for the boys,' so that I took it for granted they were taken care of." That "everything went to the boys."

Marjorie Tomczak. In 1937 Grace Harris told her that the boys had been loyal and faithful and were to receive the property when Elmer and Grace died.

Aner Erickson. Testator told witness "we haven't

any children and these boys are like our sons, it's all fixed they are going to get what we leave."

Peter Galt. Asked Harris about purchasing land and Harris told him he did not care about the money and that after he was gone Galt could talk to the boys.

John Neagle, a brother-in-law of plaintiffs, said that in 1941 testator told him plaintiffs were two of the hardest working boys and that he had a "working arrangement" with them. In 1951 testator repeated the statement adding that upon his death plaintiffs were to get what they had.

Merrill Farthing. Testified that, in what he thought was 1947, Mrs. Harris said they intended to leave the place to plaintiffs. They had no close relatives of their own to leave it to and the boys had done most of the work.

Wales Wenberg. Testified that about a year before Mrs. Harris died she said in regard to plaintiffs, "Why shouldn't they (work)? The ranch is theirs when we are gone."

Gilbert Swienney. Testified that he heard Harris tell plaintiffs "to go ahead and do whatever they thought was best because they were going to have to do it by theirselves anyhow one of these days."

G. R. Pense. Testified that in 1932 testator told him he appreciated all the boys had done for him and that he was going to see that the boys got everything they had; that testator never mentioned an agreement to leave the boys everything.

The testimony of the next five witnesses, it should

be noted, indicates admissions made by testator following the date of his last will on December 8, 1953.

J. Marius Christensen. Just prior to testator's leaving for Laramie before his death, testator told him that they had made a will leaving the property to the boys.

Lloyd Sowers. Two months before testator passed away he told witness "The boys are all fixed up, they're took care of." "They get the ranch" and he believed he understood him to say what went with it.

Charles Farthing. Testified that in 1954 testator told him he "had raised both boys since they were young; they were the same as his own sons and that he was going to give them the ranch and everything * * * that he thought they were entitled to it."

E. E. Lietz. In December, January, February or March before testator died he told Lietz that "years ago he agreed that the boys stay and it would be their outfit; if they didn't, why, he couldn't help it."

Francis Slover, brother of plaintiffs, testified that in 1932 he conversed with testator. Testator told him that they had an arrangement with plaintiffs that plaintiffs were to work at the ranch without wages for their board, room, clothing and general necessities and at the death of the Harrises were to receive the property fully, "to be their holding." In February or March of 1954, Harris told him "Well, now, you know, since Grace has passed on the boys are going to fall into a nice ranch one of these days."

Mrs. Riedesel, witness for defendants, testified that testator read his last will to her and to her husband in January 1954.

Mr. Riedesel testified that testator told him that the boys had read the will.

3. In the will of John Elmer Harris, dated March 14, 1940, he left his property to Grace A. Harris, with a provision that if she predeceased him the property would go to plaintiffs.

4. The will of January 14, 1947, by both Grace A. Harris and John Elmer Harris, reads:

"Whereas at death of either of the above all property, both real and personal shall become the property of the survivor. Now therefore, if there be no survivor then we the undersigned * * * hereby give and bequeath unto James E. Slover and Thomas A. Slover all our property both real and personal * * *."

5. The will of testator, dated December 8, 1953, hereinabove set out, leaves a life estate to the plaintiffs.

The court, having in mind, no doubt, the quality of proof necessary to prove such oral contracts, found against the plaintiffs on the first two causes of action. The fact that plaintiffs performed long years of work, as they did in this case, does not, standing alone, prove an oral contract to will an absolute estate in property. It can and should be considered with other evidence tending to show a contract. The admissions hereinabove set forth are considered, as a matter of law, as weak evidence and must be carefully scrutinized. But they can be considered with other evidence in the case. The will of 1940 is evidence tending to show a contract to eventually leave all of the property to the plaintiffs absolutely. The will of 1947 can be considered as tending to show a contract to leave the property to plaintiffs. But it is likewise true that the will of 1953, the last will of the testator, is evidence that there was no

contract as alleged by plaintiffs. The evidence accordingly is conflicting and under the well known rules of appellate procedure we cannot interfere with the court's finding. In 94 C.J.S. § 113(2), p. 870, it is stated:

"A will made in conformity with an alleged contract is strong confirmatory proof that such an agreement was entered into * * * but the subsequent execution of another will, not in conformity with the alleged contract, is strong evidence of the absence of such an agreement."

In Widman v. Maurer, 19 Wash.2d 28, 141 P.2d 135, 141, the court said:

"It is argued by the respondents that the execution of the first will by Mrs. Hofmann shortly after the termination of the probate proceedings in the estate of Rudolph Hofmann is strong evidence of her agreement to make such will. Conceding the evidentiary value of the first will, we think the execution of the subsequent will and codicil must also be taken as similar evidence of the absence of any such agreement."

In Price v. Wallace, D. C., 224 F. 576, one of the influencing matters which caused the court to hold the contract to bequeath property was not established was evidence of the execution by the promisor of a will inconsistent with the alleged contract.

In 57 Am.Jur. § 187, pp. 165, 166, it is pointed out: "On the other hand, whatever corroborative force and effect a will may have as tending to establish a contract to make a devise may be nullified by other evidence tending to disprove the existence of the contract."

The conflicting evidence indicates that there might have been a contract. Also that there might not have been a contract. Further that there might have been

a contract, but that the estate to be given was what the testator actually gave. Different inferences can easily be drawn from the admissions of the testator and his wife, when considered as a whole in the light of all the evidence, and with the scrutiny that the law requires. At least five of plaintiffs' own witnesses related conversations with Harris subsequent to the making of his last will in which Harris made statements to the general effect that "They get the ranch." "Give them the ranch and everything out there." "The boys had stayed with them all through these years, and he thought they were entitled to it." "That years ago he agreed that the boys could stay and it would be their outfit." We know that at the time these statements were made testator had executed a last will leaving a life estate to plaintiffs. The statements are similar in tenor to those testified to by all of plaintiffs' witnesses. We do not mean to infer that the witnesses above were not testifying to the best of their recollections as to what testator said. But the fact that a will had been made leaving a life estate, at the time the statements were made, could well be taken into consideration by the trial court in determining the purport, intent and meaning of the terms as used by the testator. When viewed in this light the statements are not altogether inconsistent with the last will. As pointed out, we cannot disturb the trial court's finding in this respect.

Plaintiffs claim that the will of January 14, 1947, was irrevocable because it was a joint and mutual will and that testator could not accept its benefits, and then revoke it. John Elmer Harris was the survivor and took his wife's property, whatever it was, without restriction or burden. The will is clear and unambiguous. The court below had no right, nor have we, to supply words to change the clear meaning of the will.

To hold that this will means that the testator and testatrix thereby devised their respective property to each other for life, remainder to plaintiffs, or that they devised their property to each other absolutely, subject to a burden that the last of the two to die would have had to leave the property to plaintiffs, is to supply the language

"* * * for the life of the survivor."

following the language,
"* * * at the death of either the above, all property, both real and personal shall, become the property of the survivor."

or, to supply the language,

"* * * when the survivor of us dies."

instead of

"Now therefore, if there be no survivor * * *."

This the court could not do, nor could it resort to extrinsic evidence to supply words to change the plain meaning of the will. 57 Am.Jur. § 1129, pp. 723, 724; 57 Am.Jur. § 1109, pp. 709, 710. Plaintiffs also claim that the 1947 will was executed by virtue of a contract between the Harrises and in compliance with their contract with plaintiffs, making plaintiffs a third party beneficiary to the will. The court found that there was no contract with plaintiffs and the Harrises, and again the difficulty is that by the very terms of the will the survivor took the property absolutely and without restriction, and we cannot change the will.

The court gave judgment to plaintiffs for $127,294.-80 on the quantum meruit. Plaintiffs do not attack the amount of the judgment but assign as error the

court's ruling requiring them to elect to take either under the will or the quantum meruit. They claim that they are entitled to both.

Annotations on the subject are contained in 86 A.L.R. 6, 47 A.L.R.2d 1140. Annotation on a collateral subject, namely, that of election is found in 152 A.L.R. 898. See also 96 C.J.S. §§ 1137, 1138, 1139, 1140, pp. 922, 923, 929. That the plaintiffs are not entitled to both the judgment of $127,294.80 and the life estate in the property is indicated by the following:

1. We have heretofore set out the will. It is quite apparent from the provisions thereof that the testator intended that his estate should be kept substantially intact after the expiration of the life estate given to plaintiffs. This would seem to indicate that the life estate was left to satisfy the value of the services of the plaintiffs. See Alerding v. Allison, 31 Ind.App. 397, 68 N.E. 185; Annotation, 86 A.L.R. 14.

2. It is true that the courts generally seem to be inclined to hold that a devise or legacy shall not be construed to be in satisfaction of an indebtedness, unless that is clear. Thus it has been held that when the legacy is smaller in amount than the indebtedness, or is not as beneficial, it will not be deemed to be in satisfaction thereof. See cases in Annotation, 86 A.L.R. pp. 28, 29. Speaking of Spurr's Appeal, 116 Conn. 108, 163 A. 608, cited by plaintiffs, the annotator in 152 A.L.R. 903, stated. "In personal-service cases, as in other instances, courts have sometimes manifested considerable adroitness in avoiding applications of the doctrine of election." The value of the life estate is not shown but we may assume it is not worth $127,294.80. However, in the case at bar, we have one factor not frequently found in cases. The theory of the plaintiffs

is that the services of plaintiffs were to be compensated by a provision in a last will and testament. The evidence in the case is to the same effect. There is none to the contrary. That indicates that plaintiffs were to be compensated by a provision in a will, and even though compensated inadequately, the intention clearly was that it should be in satisfaction at least pro tanto. In Reynolds v. Robinson, 64 N.Y. 589, 594, the court stated:

"The agreement in law * * * was with the husband that the testator should pay for the services by a provision for his wife in his will. If he had failed wholly to make such a provision, it would have left the plaintiff with his entire cause of action. If he made such a provision in part only, then the husband has a cause of action for the balance. (Jacobsen v. La Grange, 3 J.R., 199; Patterson v. Paterson, 13 id., 379, Eaton v. Benton, 2 Hill, 578; Robinson v. Raynor, 28 N.Y. 494.)"

In Kujawski v. Sobelewski, 72 Pa.Super.Ct. 326, 330, the court said:

"Now it is clear from the testimony offered by the plaintiff herself that the compensation she had agreed to accept was to be made by some testamentary provision in her favor. From this it would seem to follow that the legacies given to her by the will of the decedent ought to be regarded as an attempt at least on his part to execute the agreement he had made. We may concede, for the purposes of this case, that she was not concluded by these provisions if she were able to show that in fact they were inadequate to satisfy the legal obligation of the deceased to reasonably compensate her. We do not think, however, she is in a position to regard them as mere gratuities and recover in addition to them the full amount of the wages she may have earned. They at least should be a credit pro tanto on the amount of her compensation."

In re Cooke's Estate, 207 Minn. 437, 292 N.W. 96, 98, the rule was stated to be as follows:

"That rule is to the effect that where services are rendered upon the understanding that they are to be compensated for by testamentary disposition, the value of a legacy, unless otherwise stated in the will, shall be applied upon the reasonable value of such services either in full satisfaction or pro tanto as the case may be." See also In re Abruzzo's Estate, 137 Misc.Rep. 299, 242 N.Y.S. 499.

Under this rule then it is clear that the devise and bequest of the testator to the plaintiffs was intended to compensate plaintiffs for their services. If the devise and bequest was insufficient, only a deficiency judgment could be recovered. But plaintiffs chose to ask the court for, and were granted, full compensation under the quantum meruit count, as one of two alternative options.

It is clear from what we have said that plaintiffs cannot take both the judgment for some $127,294.80 and the devise under the will. And if the plaintiffs had accepted the judgment of the amount, then we should probably be compelled to hold that they elected not to take under the will. Alerding v. Allison, supra; In re Woodfin's Estate, 232 Iowa 1013, 6 N.W.2d 859. However no election has so far been made, so we shall consider the matter in that light.

The alternative money judgment for services is for $127,294.80. The property of the estate was appraised at $183,921.57, of which approximately $121,650 is the appraised value of the personalty. It is quite apparent, as counsel for defendants state, that most of the property of the estate would have to be sold in order to satisfy that judgment. In fact it is conceivable that substantially all of it would have to be sold, leaving the remaindermen substantially nothing. As heretofore stated, it was clearly the intention of the testator that

the livestock and ranch should be substantially kept intact after the expiration of the life estate granted by the will. As indicated, it is impossible to do so under present conditions. The situation in this case is a peculiar one requiring its own peculiar remedy.

Taking into consideration the intent of the testator, and the interests of the plaintiffs and the remaindermen, we think we should give, and we do hereby give and grant unto the plaintiffs, in addition to the options granted by the judgment of the trial court, a further and additional option of election as follows:

The plaintiffs shall, under this option, be entitled to take and receive the $10,000 and the life estate in such property of the estate which becomes subject to distribution as the same is bequeathed to them under the terms and provisions of the testator's will.

In addition to the plaintiffs receiving such bequest, a judgment, upon the exercise of this option rather than either of the other options, shall be entered in favor of the plaintiffs and against the estate in an amount equal to the sum of $127,294.80, less the sum of $10,000, the cost and expense of administration including all amounts paid in satisfaction of taxes and all specific bequests of money; provided, however, that such judgment shall not be or become a lien against the real estate belonging to the estate but shall only be paid and satisfied from the personal estate of the deceased, it being permitted to pay and satisfy such judgment in kind by applying the livestock, machinery, and equipment of the estate at the appraised values as heretofore returned in the matter of the administration of the estate.

Either one or the other of the options of election

granted by the trial court, or the additional option granted herein must be exercised within ninety days after the date of the mandate of this court is filed in the trial court. The trial court shall also make such additional orders not inconsistent herewith as may be necessary.

As herein modified, the judgment of the trial court is affirmed.

Affirmed as modified.