John Charles ARBENZ, by Robert M. Seipt, His Guardian, Appellant (Plaintiff below),

v.

Eli D. DEBOUT, Administrator of the Estate of Arthur William Tanner, Deceased, Appellee (Arthur W. Tanner, defendant below).

No. 3678.

Supreme Court of Wyoming.

Aug. 16, 1968.

Daniel P. Svilar of Boyer & Svilar, Lander, for appellant.

Alfred M. Pence of Pence & Millett, Laramie, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

John Charles Arbenz, a 19-year-old minor, through his guardian sued defendant for injuries received in an automobile accident occurring on Highway 130 west of Laramie about 6:30 p.m., November 2, 1966, alleging defendant's negligent operation in not exercising proper care and vigilance and in not maintaining a proper lookout or having his vehicle under control. Defendant answered, contending that he had not been negligent and that it was plaintiff's negligence which had caused the accident. The issue of liability was tried separately to the court without a jury and at the conclusion of plaintiff's case defendant moved for a judgment on the ground of plaintiff's negligence or contributory negligence being the proximate cause of the accident and injuries. The court granted the motion, finding inter alia that "the collision between parties' cars and the resultant damages to the Plaintiff had been proximately caused by the joint negligence of both the Plaintiff and the Defendant." Plaintiff has brought this ap-

peal, arguing that the trial court erred in finding Arbenz negligent, in finding that his tending to his disabled vehicle was the proximate cause of the injuries, and in failing to apply the doctrine of last clear chance to the facts.

With the exception of defendant's observations immediately prior to the collision, which we will mention hereafter, there is no disagreement concerning the facts. Arbenz, employed by the Mountain States Ranch School some thirty miles west of Laramie, had started driving an automobile and received his driver's license a few months before the date of the accident. On the afternoon of November 2 he had been sent to pick up ranch supplies in Laramie and while there after a cursory examination and without test driving had purchased a used 1956 two-door Nash automobile for the sum of fifty dollars and after dark started to drive it westerly to the ranch school. Some miles out of Laramie the engine sputtered and died, the car coming to rest in the right-hand lane of traffic on the 22-foot-wide paved road. He testified that he left the headlights and taillights burning, discovered that the transmission had locked in second gear, attempted to disengage it by rocking the vehicle back and forth so he could push it into the borrow pit, but was unable to do so. After again trying to disengage the gears, he got out, opened the hood, and started to get the gas line off the carburetor, assuming there was something either plugging the gas line or fouling the carburetor. When he noticed the reflection from the lights of defendant's Plymouth station wagon, which was traveling westerly toward him, he stepped back but did not get completely from under the hood when defendant's car struck the Nash in the rear. Plaintiff's vehicle came to rest approximately 208 feet from the point of impact, where it left two-foot skid marks following the collision; prior to these two marks, the defendant's vehicle left thirty feet of skid marks. Plaintiff himself was carried some forty feet

down the highway. The investigating patrolman, who arrived some fifteen minutes afterwards, found one headlight and one taillight of the Nash still burning. The glasses on both taillights were broken.

Just prior to the accident, Mrs. Thomas Page, accompanied by her husband, approached the Nash from the west, and Page said he noticed the automobile standing in the road, apparently with one headlight, but later saw that Arbenz was standing in front of one of the headlights, looking under the hood. After they had gone past, Page looked back and saw that the Nash's taillights, although not especially bright, were on. Some 200 or 250 yards further they met the Tanner car, which dimmed on approaching. Page, apprehensive of an accident, looked around, saw the impact, and returned to the scene. He saw no other cars in the vicinity. Mrs. Page generally confirmed her husband's testimony.

Tanner testified that just after he met the Page vehicle he saw a car in the borrow pit turn on its lights and head westerly along the pit and then turn onto the road, driving a little faster than Tanner (forty to forty-five miles per hour), and that while he was watching that vehicle, for which he had dimmed his lights, he saw a dark spot in the road (plaintiff's car), slammed on his brakes, tried to jerk his vehicle left, but didn't make it.

■ The procedural aspect of the case is worthy of some attention. Plaintiff cites Fink v. Lewark, 70 Wyo. 150, 246 P.2d 195, for the principle that a motion for judgment at the close of defendant's case is in the nature of a demurrer to the evidence and admits its truth. Appellee counters by calling attention to the fact that the Fink case was decided under the provisions of § 3–3505, W.C.S. 1945, now superseded by the Wyoming Rules of Civil Procedure, but does not indicate under which rule or statute defendant was proceeding when he moved for judgment. This circumstance indicates the desirability of adherence to procedure allowed by the

rules—in this instance of following Rule 41(b) (1), W.R.C.P., by moving "for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." However, we will here consider defendant's motion for judgment as having been an attempt to comply with the provisions of Rule 41(b) (1). This raises a question which has created some concern in different courts as to the requisite quantum and quality of the evidence justifying a court's granting of such a motion. 2B Barron and Holtzoff, Federal Practice and Procedure, § 919 (1961); 27 U.Chi. L.Rev. 94. We favor the disposition of the problem made in Rogge v. Weaver, Alaska, 368 P.2d 810, 813:

"Where plaintiff's proof has failed in some aspect the motion should, of course, be granted. Where plaintiff's proof is overwhelming, application of the rule is made easy and the motion should be denied. But where plaintiff has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that in the latter situation the trial judge should follow the alternative offered by the rule wherein it is provided that he ' * * * may decline to render any judgment until the close of all the evidence', and deny the motion. * * *"

Such disposition, undoubtedly meritorious in jurisdictions such as Alaska, which follow exactly the federal rule requiring findings, becomes particularly essential in Wyoming where findings are not obligatory.

■ No one could well question plaintiff's reliance upon Johnston v. Vukelic, 67 Wyo. 1, 213 P.2d 925, 930, for the rule that the burden of proving plaintiff's contributory negligence was on the defendant, but, of course, we cannot however overlook that as appellee points out in the same case it was said that plaintiff's own evidence may clearly show his negligence. Incidentally, we must register disapproval of the attempted injection by appellee of the rule that this court must assume the evidence in favor of the successful party is true and that every favorable inference which may be reasonably and fairly drawn from it must be indulged in. That principle has no application in a motion of this nature, which under the federal interpretation has been considered to be similar to one for a directed verdict, O'Brien v. Westinghouse Electric Corporation, 3 Cir., 293 F.2d 1, 9, wherein the entire evidence must be viewed most favorably to plaintiff, giving him the benefit of all reasonable inferences which may be deduced therefrom. Pangarova v. Nichols, Wyo., 419 P.2d 688, 690; In re Estate of Morton, Wyo., 428 P.2d 725, 728; 5 C.J.S. Appeal & Error §§ 1559(3) and 1559(4).

Addressing ourselves to the question of negligence, we approve the holding plaintiff cites from Johnston v. Vukelic, supra, 213 P.2d at 930:

" * * * The standard of conduct to which he [plaintiff] should conform is the standard to which a reasonable man would conform under like circumstances. * * * The words 'reasonable man' denote a person exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. * * *"

And we do not question the philosophy expressed in Prosser, Torts, p. 125 (2d ed.), that:

" * * * 'It would appear that there is not standardized man; that there is only in part an objective test; that there is no such thing as reasonable or unreasonable conduct except as viewed with reference to certain qualities of the actor—his physical attributes, his intellectual powers, probably, if superior, his knowledge and the knowledge he

would have acquired had he exercised standard moral and at least average mental qualities at the time of action or at some connected time.' "

Counsel, seeking to adapt this approach to plaintiff, says that "Arbenz was 18 years of age. He had only an eighth grade education and had been licensed to drive an automobile for about three months before the collision," and thereafter quotes various portions of the evidence relating to the purchase of the car, driving it, and the occurrences immediately preceding the collision. Reliance is placed upon the general rules that travelers on a public highway have the right to assume that other travelers will exercise reasonable care and caution and will obey traffic regulations and rules of the road and that a motorist is not bound to anticipate negligence on the part of others. He points out § 31–148, W.S.1957 (Compiled 1967), which prohibits the stopping of vehicles on highways, emphasizing the provisions that an unobstructed width of the highway shall be left for free passage of other vehicles and the exception for those disabled. Without attempting to present similar cases, plaintiff's counsel says, "Arbenz used care in examining the vehicle before he purchased it; he drove carefully; he attempted to move the car off the highway; he assumed he and his vehicle could be seen by other careful drivers; he acted in compliance with the Wyoming law, and generally conducted himself as would a reasonably prudent person—free of negligence." Plaintiff continues his criticism of the judgment by saying that the evidence was insufficient to justify holding that the conduct of Arbenz in tending to his disabled vehicle was the proximate cause of the injuries, quoting from various Wyoming cases wherein allusion is made to the subject of proximate cause with no effort being made to relate the facts in such cases to those in the present litigation.

Turning to the matter of proximate cause, in Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P.2d 498, 501, we observed that whether the conduct of the plaintiff in the matter of using care in the operation of his automobile was legally a contributing cause of the collision depends upon whether according to the usual experience of mankind that result or a result of that character ought to have been foreseen. In Frazier v. Pokorny, Wyo., 349 P.2d 324, 329, we voiced similar sentiments in saying that what constitutes the, or a proximate, cause of an accident depends largely on the particular circumstances of the case and that one of the most satisfactory definitions of proximate cause is that the accident must be the natural and probable consequence of the act of negligence, or, stated in a different way, the negligence and the resulting injury must be known by common experience to be a natural and usual sequence.

The evidence before the trial court upon which it held that the collision and the resulting damages to plaintiff had been proximately caused by the joint negligence of both parties included Arbenz's testimony of the car's sputtering; his shifting to second gear; his vehicle's stopping in the right-hand lane of traffic; his trying to get it out of gear by rocking; his going to the front of the car and opening the hood to try to get the gas line off the carburetor; the circumstance that the car had stopped at a point where one could see for a long distance in both directions; his taking of no precautions to warn approaching motorists and keeping no lookout for his own or their safety. This evidence was sufficient to warrant the court's holding plaintiff guilty of contributory negligence proximately causing the collision, a circumstance which precluded recovery.

We find no merit in plaintiff's argument that the trial court erred in failing to apply the doctrine of last clear chance to the facts since plaintiff did not show he was unable to avoid the injuries to him by the exercise of reasonable vigilance and care. Borzea v. Anselmi, 71 Wyo. 348, 258 P.2d 796, 802–803.

Affirmed.