George SHOOK, Administrator of the Estate of Anna Moyer, Deceased, Appellant (Plaintiff below),

v.

Juanita BELL, Executrix of the Estate of Sylvia Meda Sytsma, Deceased, and Verda Rasmussen, Ardie Collingsworth and Juanita Bell, as Legatees and devisees of Sylvia Meda Sytsma, Appellees (Defendants below).

No. 5086.

Supreme Court of Wyoming.

Aug. 21, 1979.

Edward S. Halsey, Newscastle, for appellant.

Thomas L. Whitley and Gordon W. Schukei, Newcastle, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

Prior to their deaths, Frank J. and Sylvia M. Sytsma, husband and wife, lived in Weston County, Wyoming, and held the principal part of their properties as tenants by the entirety, although Frank was the sole owner of some money which went to Sylvia under his will at the time of his death. On October 11, 1976, Frank and Sylvia executed separate wills, in which each left all of his or her property to the other, providing, however, if the named beneficiary-spouse did not survive the testator or testatrix, each will contemplated that one-half of the estate would go to Anna Moyer, Frank's sister, and that one-half would go to Verda Rasmussen, Sylvia's niece.

Frank died first, whereupon his interests which passed thereunder were distributed to Sylvia, but the great majority of his holdings became hers as the survivor in the tenancy by the entireties. Sylvia, prior to her death, rewrote her will, did not provide for Anna Moyer, and, at death, was in possession and ownership of most of the property she had previously held jointly with Frank.

Although the courts have not been uniform in their use and definitions of the terms, we define "joint" wills, "reciprocal" wills, and "mutual" wills as follows: A "joint" will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them. "Reciprocal" wills are those in which each of two or more testators makes a testamentary disposition in favor of the other. "Mutual" wills are two or more separate instruments, each executed by separate testators and manifesting a common intention to dispose of their property in a particular manner. We do not include as part of the definition of a mutual will, as some courts do, the elements of execution by each testator pursuant to an agreement, each in consideration of the other. 1 Bowe-Parker: Page on Wills, §§ 11.1 and 11.3; 97 C.J.S. Wills § 1364e(1); 79 Am.Jur.2d, Wills, § 754. Under our definitions, the wills executed by Frank and Sylvia on October 11, 1976, were mutual and reciprocal.

Anna Moyer [1] filed this action to impose a constructive trust upon one-half of Sylvia's estate in reliance upon the terms of Frank's will, together with Sylvia's and Frank's alleged contract to execute mutual and reciprocal wills. Her theory was that Sylvia and Frank had entered into an agreement to execute, and did execute, these mutual and reciprocal wills, in which Anna Moyer was a beneficiary, and since they had not been revoked before the death of Frank, and since Sylvia had taken advantage of the provisions of Frank's will, Sylvia's subsequent revocation was a breach of the agree-

---

1. Anna Moyer was alive at the time of trial, but died after this appeal was docketed in this court. We ordered that George Shook, Administrator of the Estate of Anna Moyer, Deceased, be substituted as plaintiff-appellant.

ment to execute the mutual and reciprocal wills. The Administrator for Anna Moyer's estate further contends that the heirs of Anna are entitled to recover on the contract out of which the mutual wills evolve and, of which contract, the wills were a part.

At the close of plaintiff's case, the defendants made a motion to dismiss under Rule 41(b)(1),' W.R.C.P.[2], and the judge granted it.

The court, in entering its Judgment of dismissal against the plaintiff, found:

". . . (1) that the motion is well taken and should be granted; (2) that the plaintiff has failed in the proof of her case; (3) that there was no agreement between Frank John Sytsma and Sylvia Meda Sytsma to execute reciprocal wills; (4) that each of the wills dated October 11, 1976, made by Frank John Sytsma and Sylvia Meda Sytsma set forth whatever agreement there may have been between Frank John Sytsma and Sylvia Meda Sytsma and neither of the said wills contained a provision not to revoke the wills; (5) that Frank John Sytsma and Sylvia Meda Sytsma could have provided by a provision in each will that said wills could not be revoked if that was their intent; (6) that there is no evidence that anything other than $262.72 in cash passed to Sylvia Meda Sytsma by the terms of the will of Frank John Sytsma and only the property so passing under the will could be the subject of this action even if an agreement for binding reciprocal wills had been found to exist and; (7) generally for the defendant and against the plaintiff on all issues in this case."

The questions for resolve here are whether or not there was at least prima facie evidence of a binding agreement between Frank and Sylvia with respect to which the mutual and reciprocal wills are a part and which are not revoked prior to his death. If that question may be answered affirmatively, the further question is whether or not the contract will support the imposition of a constructive trust in favor of Anna Moyer or her heirs upon one-half of Frank's and Sylvia's jointly held property, together with one-half of any funds Sylvia received under the will and which were in her possession at the time of her decease.

We will reverse for trial on the merits.

■ In considering a motion to dismiss by the defendant under Rule 41(b)(1), W.R. C.P., we are bound by the rule which says that the entire evidence must be viewed most favorably in behalf of plaintiff, giving him the benefit of all reasonable inferences which may be deduced therefrom. *Arbenz v. Bebout*, Wyo., 444 P.2d 317 (1968).

In *Arbenz*, we held that where the plaintiff has failed in his proof, the motion should be granted, where plaintiff's proof is overwhelming, the motion should be denied, and where plaintiff has presented a *prima facie case*

" ' . . . based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that in the latter situation the trial judge should follow the alternative offered by the rule wherein it is provided that he " * * * may decline to render any judgment until the close of all the evidence", and deny

2.  The relevant part of the Rule 41(b)(1), W.R. C.P., is as follows:

    ". . . After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or

    may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

the motion. \* \* \*' " *Arbenz*, supra, quoting with approval from *Rogge v. Weaver*, Alaska, 368 P.2d 810, 813.

See, also, *Angus Hunt Ranch, Inc. v. REB, Inc.*, Wyo., 577 P.2d 645, 648 (1978); and *Kure v. Chevrolet Motor Division*, Wyo., 581 P.2d 603, 606–607 (1978).

We are confronted, then, with an issue which asks whether or not the plaintiff had made out at least a prima facie case based on unimpeached testimony. What was his obligation in this regard?

A prima facie case would have been structured if the plaintiff could have proven, with unimpeached testimony, a binding agreement to execute mutual and reciprocal wills which was not revoked prior to Frank's death, together with a breach thereof by Sylvia. The impeachment requirement of the *Arbenz* rule was satisfied. There was no impeachment of the relevant testimony and the record reflects clearly that if there was, in fact, a valid agreement between Sylvia and Frank, Sylvia breached it by executing a subsequent will after Frank's death which recited the intent to revoke her prior will. The only question remaining is this: Was there evidence of an enforceable contract between Frank and Sylvia upon which the Administrator of the estate of Anna could rely?

An oral agreement to execute reciprocal wills of this nature is binding as between a husband and a wife—the survivor who has benefited by the contract is estopped from revoking the contract, and devisees and legatees of the testators can enforce it. In *In re Stringer's Estate*, 80 Wyo. 389, 343 P.2d 508 (1958), rehearing denied and opinion modified, 80 Wyo. 389, 345 P.2d 786, we quoted with approval the rule of *Brown v. Superior Court*, 34 Cal.2d 559, 564, 212 P.2d 878, 881:

" ' "Where two parties agreed to make mutual wills, each promising to dispose of his property to the other or, if the other be dead, to certain third persons, and one of the parties performs by leaving his property to the other, the intended devisees and legatees are entitled to enforce their rights as beneficiaries under the agreement. The contracting party who survives becomes estopped from making any other or different disposition of the property, and his obligations under the agreement become absolutely irrevocable and enforceable against him, at least where he avails himself of the provisions of decedent's will in his favor and accepts substantial benefits thereunder." ' " 343 P.2d at 514.

Additionally, we cited:

"97 C.J.S. Wills § 1366c, p. 298, and cited authorities. And to the same effect is 57 Am.Jur., Wills, § 174, p. 154."

In *Flohr v. Walker*, Wyo., 520 P.2d 833, 837 (1974), we said:

"The general rule seems to be that a joint and mutual will executed pursuant to an agreement based on valuable consideration is contractual as well as testamentary and becomes an irrevocable obligation on the part of the surviving testator upon the death of the other party testate under a will which is in accord with the terms of the agreement. *In re Estate of Wade*, 202 Kan. 380, 449 P.2d 488, 493; *Godwin v. Wachovia Bank & Trust Company*, 259 N.C. 520, 131 S.E.2d 456, 462–463; *Alocco v. Fouche*, 190 Cal. App.2d 244, 11 Cal.Rptr. 818, 822; 57 Am.Jur. Wills, § 712; 97 C.J.S. Wills, § 1367e(2), p. 307. . . ."

Although *Flohr v. Walker* was concerned with a "joint and mutual" will, the foregoing rule is equally applicable to a mutual will which is not joint.

Further, in *Flohr*, supra, we quoted what we deemed to be the general rule from 1 Bowe-Parker: Page on Wills, § 10.3, pp. 441–442 (1960):

" 'Language is occasionally used which seems to say that a will which is made in performance of a contract to make a will is irrevocable. It is said that a joint or mutual will may be revoked by either party while both are living upon notice to the other, but when one of the parties dies before the other has given notice, the will becomes irrevocable. Language of this sort is often used very loosely.

While the courts talk about the will as irrevocable they probably mean that the contract to make the will is enforceable if the contract is not performed. Some of the courts which have used this language, have pointed out that it is the contract and not the will that becomes irrevocable at the death of one of the parties. It has been said that after the death of one, the survivor could not violate the contract by revoking the will which the survivor made in performance of the contract. * * *'" 520 P.2d at 837–838.

Said another way:

"Frequently joint or mutual wills are made in pursuance of an agreement or compact not to revoke them. Here it is important to distinguish between the concept of wills and that of contracts. Our law has no separate concept of 'will made in pursuance of contract;' we must treat the will part as a will and the contract part as a contract. Viewed in the aspect of a will, such instruments do not differ from other wills. In order to be effective, they must be admitted to probate and they are revocable although there has been an agreement not to revoke. The matter of the contractual aspect does not properly arise upon probate, but only when the agreement is sought to be established as a claim against the estate, or in a proceeding against the successors of the decedent. This is the sound and orthodox treatment of the question. * * *" Atkinson, Law of Wills, 2d Ed. § 49, p. 224.

■ Although the making of a joint or mutual will may be evidence of the contract, standing alone such will not be sufficient to establish it—unless, of course, the contract is recited in the wills. Joint wills are generally held to have a greater evidentiary weight in this respect than are mutual wills. 79 Am.Jur.2d, Wills, §§ 810, 811; 1 Bowe-Parker: Page on Wills, supra, § 11.1, p. 554; and 97 C.J.S. Wills § 1367a, p. 301.

". . . Thus, according to the greatly prevailing view, the fact that separate wills executed by two or more persons at about the same time contain reciprocal or similar provisions is not of itself evidence of a contract between the testators, although such a contract may appear from the terms of the wills, by direct reference or by inference." 79 Am.Jur.2d, Wills, supra, § 811 at p. 865.

■ We said in *Stringer*, supra, adopting the holding in *Schomp v. Brown*, 215 Or. 217, 335 P.2d 847, that mutual or reciprocal wills, even though revoked, will stand as evidence of the contract. See, *Van Vlack v. Van Vlack*, 181 Or. 646, 182 P.2d 969, rehearing denied 185 P.2d 575 (1947). The agreement which provides the underpinning for the contractual wills is irrevocable if the survivor takes advantage of the provisions of the will made by the other. *Schramm v. Burkhart*, 137 Or. 208, 2 P.2d 14 (1931); *Ankeny v. Lieuallen*, 169 Or. 206, 113 P.2d 1113 (1941), 127 P.2d 735; *Citizens & Southern National Bank v. Leaptrot*, 225 Ga. 783, 171 S.E.2d 555, 558 (1969); and *Schomp v. Brown*, supra. We noted in *In re Stringer's Estate*, quoting from *Canada v. Ihmsen*, 33 Wyo. 439, 456, 240 P. 927, 43 A.L.R. 1010, 1014 and authorities therein contained, that agreements to make mutual and reciprocal wills between husband and wife should be favored. 80 Wyo. at 407, 343 P.2d at 514.

■ The last remaining inquiry is: Was there, in fact, prima facie proof of a contract between Frank and Sylvia as alleged by the appellant? By its holding, the trial court found that there was not. We disagree. Particularly do we disagree in light of the authority represented by our decision in *In re Stringer's Estate*, supra, and *Flohr v. Walker*, supra, taken together with the strictures of Rule 41(b)(1), supra, fn. 2.

The evidence of the agreement relied upon came from the son of Anna Moyer, who testified as follows:

"Q (By Mr. Halsey) Would you state what the conversation was after the appointment had been made, saying what each of the parties said and what you said, if anything.

"A Well, I told them after we had made the appointment, 'Now, you know, you got to leave this stuff to somebody.'

"And they said, 'Yeah.'

" 'Well, have you decided who you want to leave it to?'

"And they said, 'Yes, we think we know who we want it left to.'

" 'Well, who is it?'

"Sylvia said, 'Well, I know Frank wants his half to go to Anna.'

"Anna is my mother. And I said, 'Well, how do you want yours to go?'

"She said, 'Well, the only one that ever did anything for me has been Verda and I'd like to have her have my half.

*     *     *     *     *     *

"Q (By Mr. Halsey) What did they say about what was to happen to the property before both of them were dead? What did Frank say and what did Sylvia say?

"A (By Mr. Moyer) Frank said he wanted his property to go to take care of Sylvia until her death if she needed it to take care of herself after his death. Then when both of them were deceased he wanted his half of what was left to be distributed to my mother.

"Q After he said that, what did Sylvia say?

"A He asked her if that was all right with her and she says, 'Yes, so long as my half goes to my half of the family, mainly Verda.' "

Mr. Moyer testified that after that conversation, he took Frank J. Sytsma to the law office of Richard S. Dumbrill where Mr. Sytsma conveyed the information to Mr. Dumbrill about what the two wills should provide. After Mr. Moyer and Mr. Sytsma returned to the Sytsma residence, a further conversation took place. Mr. Moyer testified as follows:

"Q (By Mr. Halsey) As nearly as you can, repeat what each of the three of you said when you returned from Mr. Dumbrill's office to the Sytsmas' house.

"A (By Mr. Moyer) We went back in the house and Sylvia asked, 'Well, did you get the wills made?'

"And Frank says, 'Yes. We are getting them made.'

"She said, 'Well, did you give your half to Anna?'

"And Sylvia—or Frank says, 'Yes; my half to Anna and your half goes to Verda Rasmussen. Isn't that what you wanted?'

" 'Yes, that's the way I thought you were going to have them made out. That's the way I wanted it.' "

After the wills had been signed and witnessed, Mr. Moyer received copies of the wills from Mr. Dumbrill. He was asked:

"Q Did the wills reflect what you heard the parties say with regard to the disposition of their property?

*     *     *     *     *     *

"A (By Mr. Moyer) As far as I could tell what is in these wills was what Frank and Sylvia had requested to be in their wills.

"Q (By Mr. Halsey) Did you hear them both agree that that's the way it was to be?

"A Yes, I did."

We found, in *In re Stringer's Estate,* supra, similar expressions and representations to have formed the basis of a contract to execute mutual and reciprocal wills. With respect to conversations such as those set out above, which occurred prior to the execution of the wills, we said, quoting from *Van Houten v. Whitaker,* 169 Cal. App.2d 510, 337 P.2d 900, 903:

" ' *   *   * [A] subsequently executed will may relate back to the making of any oral agreement which it embodies so as to validate the latter under the statute of frauds *   *   *.' " 343 P.2d at 513.

See, also, *Cook v. Walsh,* 39 Or.App. 357, 591 P.2d 1201, 1203 (1979).

Mr. Moyer's testimony, being strikingly similar to the testimony considered by this court in *In re Stringer's Estate,* supra, is sufficient to constitute a prima facie showing of a valid and binding informal contract to execute mutual reciprocal wills. It clearly fulfills plaintiff's requirements under Rule 41(b)(1), supra, as defined by this court's decisions in *Arbenz,* supra, and *Angus Hunt Ranch,* supra.

The question as to whether or not a constructive trust can be imposed on property held by Frank and Sylvia in an estate by the entireties and which, therefore, did not pass to Sylvia by virtue of the probate of Frank's will, is a question to be resolved from the terms of, and the construction of, the agreement to make the mutual and reciprocal wills—should such an agreement be found by the trial court after a full hearing on this matter.

The same rules pertaining to property which passes under all wills apply to the property which passes under joint or mutual wills. 97 C.J.S. Wills § 1368; and 1 Bowe-Parker: Page on Wills, § 10.18. It may be said that inasmuch as the moiety of the husband or the wife in a tenancy by the entireties cannot be unilaterally disposed of by either of them during their lifetime and, therefore, cannot form a part of a probate estate, neither can it provide the consideration for an agreement to make mutual or joint wills and does not form part of the subject of such an agreement. *Nussbacher v. Manderfeld*, 64 Wyo. 55, 186 P.2d 548 (1947); *Witzel v. Witzel*, Wyo., 386 P.2d 103 (1963). However, a contract to make a will can pertain to property held in tenancy by the entireties. *Olsen v. Olsen*, 189 Misc. 1046, 70 N.Y.S.2d 838 (1947); and *Janes v. Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954). The agreement may be specific in setting forth the property involved. Such property may be identified in the wills made pursuant to the agreement as was done in *Flohr v. Walker*, Wyo., 520 P.2d 833, 834 (1954), which described the property as "all personal and real property, of every nature and description, and wherever located, which *either or both of us* may now or hereafter own * * *." [Emphasis supplied]

If the court here finds the existence of an agreement to make mutual and reciprocal wills, it must also determine from all of the evidence the intent of Frank and Sylvia with respect to the property subject to the agreement.

Reversed for trial-court action which is not inconsistent with this opinion.