Robert W. SIEVERS,
Appellant (Plaintiff),

v.

John R. BARTON, Personal Representative, ex rel., of the Estate of Meritt N. Barton, deceased; Marjorie Barton, individually; and George Barton, individually, Appellees (Defendants).

No. 88–235.

Supreme Court of Wyoming.

June 2, 1989.

**490**

Henry A. Burgess and Robert James Wyatt of Burgess & Davis, Sheridan, for appellant.

Lawrence A. Yonkee of Redle, Yonkee & Toner, Sheridan, for appellees.

Before CARDINE, C.J., THOMAS, URBIGKIT and GOLDEN, JJ., and BROWN, Retired J.

BROWN, Justice, Retired.

Meritt Barton and Caroline Barton, husband and wife, executed reciprocal wills. The residuary legatees in the two wills were identical. Appellant Robert W. Sievers was to receive one-half of the residuary estate according to each will with the balance to go equally to Meritt's niece and nephew.

Mr. Barton survived his wife, Caroline, and probated her estate. He also changed his own will after his wife's death and made no provision for appellant. Appellant, contending that it was a breach of contract for Meritt Barton to change his will and eliminate appellant as a residuary beneficiary, filed an action for declaratory relief and for a redress of the rejection of his claim in probate against the estate of Meritt Barton. The trial court granted a summary judgment in favor of appellees John R. Barton as personal representative of the estate of Meritt Barton, Marjorie Barton and George Barton. This appeal followed.

Appellant specifies the issues to be:

1. Whether Plaintiff's [appellant's] proffered documentary evidence and supporting testimony meet the requirements of Wyoming's Statute of Frauds [Wyo. Stat. (1977), § 1–23–105(a) ] and raise issues of material fact.

2. Whether the District Court's failure to give Plaintiff/Appellant the benefit of all favorable inferences is reversible error.

3. Whether it is reversible error in this case for the District Court to keep Plaintiff from presenting his case to the jury by granting summary judgment.

Appellees state the issues:

1. Did the trial court err in finding that there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law?

(a) Considering the evidence in the light most favorable to Appellant, has he demonstrated prima facie that the Bartons agreed to make irrevocable wills, each promising to dispose of property to the other or, if the other be dead, one-half to Robert Sievers?

We will affirm.

Meritt N. Barton and Caroline R. Barton were married in 1940. During their married life, they put together a large and successful farm and ranching operation. Some of their property was held as tenants in common and some individually. In August 1977, Mr. and Mrs. Barton executed reciprocal wills. The residuary provisions in these reciprocal wills are of identical effect:

| Caroline Barton Will Dated August 23, 1977 | Meritt N. Barton Will Dated August 23, 1977 |
|---|---|
| THIRD: If my husband survives me I give him all of my property of whatever kind and wherever located. | FOURTH: If my wife survives me I give her all the rest of my property of whatever kind and wherever located. |
| FIFTH: I give my residuary estate to the following persons: | SIXTH: I give my residuary estate to the following persons: |
| TO: ROBERT W. SIEVERS ... one-half thereof | TO: MARJORIE BERTAGNOLLI ... one-fourth thereof |
| TO: MARJORIE BERTAGNOLLI ... one-fourth thereof | TO: GEORGE BARTON ... one-fourth thereof |
| TO: GEORGE BARTON ... one-fourth thereof | TO: ROBERT W. SIEVERS ... one-half thereof |

The other residuary provisions in the wills were identical. Meritt and Caroline had no children; Marjorie Bertagnolli and George Barton are Meritt's niece and nephew. Robert W. Sievers is Caroline's only brother.

Caroline Barton died May 11, 1981, and owned substantial real and personal property subject to probate. In the probate proceedings of Caroline's will, Meritt Barton filed a disclaimer to certain property in the estate consisting of $200,000 cash and real property located in Moorcroft, Wyoming. A partial decree of distribution, dated March 22, 1982, set over and distributed the property disclaimed to those named in the residuary clause of Caroline's will, that is, one-half to Robert W. Sievers, one-fourth to Marjorie Barton (Bertagnolli) and one-fourth to George Barton. Except for the property disclaimed, Meritt Barton received all of his wife's property in the probate proceedings.

On February 12, 1987, Meritt Barton executed a new will and made no provision for appellant Robert W. Sievers. Meritt Barton died August 29, 1987, and his will was admitted to probate. On December 14, 1987, appellant filed a claim against the estate of Meritt Barton for one-half of decedent's residuary estate. The claim was rejected.

On December 30, 1987, appellant filed this action seeking declaratory relief, pursuant to W.S. 1–37–103 and 1–37–105, and a redress of the wrongful rejection of his claim against the estate of Meritt N. Barton, pursuant to W.S. 2–7–718. Both appellant and appellees demanded a jury trial. Appellees filed a Motion for Summary Judgment on May 26, 1988, and the motion was heard on June 21, 1988. An order granting summary judgment to appellees was filed July 6, 1988. On June 28, 1988, appellant filed a Motion for Amendment of Judgment which was heard on July 20, 1988, and denied. That same day appellant filed his Notice of Appeal.

The trial court concluded that there was no genuine issue as to any material fact and that appellees were entitled to judgment as a matter of law. When a case is in this posture, we review the record on appeal in a " 'light *most favorable* to the party opposing the motion giving him *all favorable inferences* that can be drawn from the facts.' " *Claassen v. Nord*, 756 P.2d 189, 194 (Wyo.1988) (quoting *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987)) (emphasis added). See also *Bowlerama, Inc. v. Woodside Realty Company*, 752 P.2d 1377 (Wyo.1988).

Before appellant can prevail in this action, he must demonstrate that there was some evidence creating a genuine issue of

material fact regarding the existence of a contract between Meritt Barton and Caroline Barton to dispose of their property in a certain way, that is, to devise and bequeath one-half of their residual estates to Robert W. Sievers.

*Shook v. Bell,* 599 P.2d 1320 (Wyo.1979) inferred that we may go beyond the two wills of the testators to determine if the testators contracted to dispose of their property in a certain way. Because of the absence of a contract set out in either Barton will, we must examine the record to see if there is other evidence that Mr. and Mrs. Barton contracted to dispose of their property in the way appellant alleges.

The attorney for Meritt and Caroline Barton, Edward S. Halsey, prepared the August 23, 1977, wills at the request of Mr. and Mrs. Barton following a meeting in Mr. Halsey's office in early August 1977. It is from this meeting that appellant claims there was an agreement. He directs our attention to specific testimony in the depositions of Mr. Halsey and appellant, which he contends is evidence of an agreement between Meritt Barton and Caroline Barton to have identical residuary clauses in their respective wills to the end that Robert W. Sievers would receive half of their residual estates. Appellant also alleges that the affidavits or depositions of three other people will tend to show the existence of an agreement. However, appellant does not tell us what these instruments say. Appellant further contends that the disclaimer in connection with the probate of Caroline Barton's will is evidence of an agreement.

■ In his deposition, Halsey testified that:

Q. [By Mr. Burgess] They [Mr. and Mrs. Barton] could have had some agreement between them as to how their respective estates would be distributed and you would not have known about it; isn't that true?

A. That's true.

\* \* \* \* \* \*

Q. It's quite possible that Caroline and Meritt could have had an agreement between them in regard to the mutual dispositive provisions of their will of which you would have had no knowledge; isn't that true?

MR. YONKEE: I object to the form of the question and the terminology quite possible. Answer.

Q. (BY MR. BURGESS) Well, it's possible.

A. It's possible.

\* \* \* \* \* \*

Q. Was there any conversation that you recall between Caroline Barton and Meritt Barton at that time concerning the making of wills?

A. I think Caroline might have said, right about that time, "Is that all right with you, Meritt?" And Meritt said words to the effect, "Whatever you want is fine with me, Caroline."

\* \* \* \* \* \*

Q. At that meeting, did Meritt Barton say anything about making a will?

A. \* \* \* [H]e hadn't said anything, so I said, "How about you, Meritt, do you want to—are you going to make a will?" And he said, "Well, I probably should," or, "I guess I will," something to that effect.

And I said, "What do you want in your will?" And he said, "Well, make it like Caroline's."

\* \* \* \* \* \*

Q. (BY MR. BURGESS) When you were testifying just now, it was my understanding that you said that Caroline wanted half to her brother and half to Marjorie; is that correct?

A. I asked her if Meritt died before she did—

Q. Yeah.

A. —how did she want her property to go? And she said she wanted her brother to have part of her estate and leave him half and the other half to Marjorie and George, and said to Meritt, "Is that all right with you, Meritt?"

Q. And he said, "Yes"?

A. Meritt said, whatever you—words to the effect, "Whatever you want is all right with me, Caroline."

Q. And then he had you draw a will with a similar provision?

A. Yeah. And I asked him if he wanted a will. He said, "I might as well have one."

I said, "What do you want in it?" And he said, "Make it like Caroline's."

Based on the foregoing testimony from Mr. Halsey's deposition, appellant says in his brief:

It is Plaintiff/Appellant's position that Meritt and Caroline either (i) made a verbal agreement assuring their mutual respect for each others' intentions to keep their respective one-half of the total of their assets and ultimately cause it to descend to the designated members of their respective families *before they went to Mr. Halsey's office;* or else (ii) reached such a verbal agreement *during the course of their meeting with Mr. Halsey the first week in August, 1977.* [Emphasis in original.]

There is nothing in the record that hints of an agreement existing before Mr. and Mrs. Barton went to see Mr. Halsey about the wills. What transpired in Mr. Halsey's office fell far short of amounting to an agreement to dispose of their property in a certain way. In appellant's own deposition of March 24, 1988, reference is made to a conversation in June 1981, between Meritt Barton and appellant. Appellant testified that Mr. Barton told him that his will was the same as Caroline's will, that appellant would get one-half of everything, and that he wanted to protect George and Margie. Meritt Barton also told appellant what "half of everything was."

Regarding a conversation of a later date, appellant testified that Mr. Barton told him that he had changed his will and given the ranch to George and Margie but appellant should not worry because Barton had set aside two million dollars in the bank for him. Appellant stated he was of the impression that Mr. Barton did not realize he had disinherited appellant and that always, up to May 1987, Mr. Barton had indicated that appellant was taken care of because he had over two million dollars in the bank.

We summarized the definitions of joint, *reciprocal* and *mutual* wills in *Shook,* 599 P.2d at 1321 (emphasis added):

Although the courts have not been uniform in their use and definitions of the terms, we define "joint" wills, "reciprocal" wills, and "mutual" wills as follows: A "joint" will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them. "Reciprocal" wills are those in which each of two or more testators makes a testamentary disposition in favor of the other. *"Mutual" wills are two or more separate instruments,* each executed by separate testators and manifesting a common intention to dispose of their property in a particular manner. We do not include as part of the definition of a mutual will, as some courts do, the elements of execution by each testator pursuant to an agreement, each in consideration of the other. 1 Bowe–Parker: Page on Wills, §§ 11.1 and 11.3; 97 C.J.S. Wills § 1364e(1); 79 Am.Jur.2d, Wills, § 754.

*Shook* also quoted *Flohr v. Walker,* 520 P.2d 833, 837 (Wyo.1974), wherein we said:

The general rule seems to be that a joint and mutual will executed pursuant to an agreement based on valuable consideration is contractual as well as testamentary and becomes an irrevocable obligation on the part of the surviving testator upon the death of the other party testate under a will which is in accord with the terms of the agreement. *In re Estate of Wade,* 202 Kan. 380, 449 P.2d 488, 493[1969]; *Godwin v. Wachovia Bank & Trust Company,* 259 N.C. 520, 131 S.E.2d 456, 462–463[1963]; *Alocco v. Fouche,* 190 Cal.App.2d 244, 11 Cal.Rptr. 818, 822[1961]; 57 Am.Jur.Wills, § 712; 97 C.J.S. Wills, § 1367e(2), p. 307.

It is not disputed that Mr. and Mrs. Barton made reciprocal wills. Perhaps these wills were also mutual according to the definition of mutual wills in *Shook.* That is not enough, however, to establish that Sievers is entitled to one-half of the Meritt Barton estate. We have said:

Although the making of a joint or mutual will may be evidence of the contract, standing alone such will not be sufficient to establish it—unless, of course, the contract is recited in the wills. Joint wills are generally held to have a greater evidentiary weight in this respect than are mutual wills.

*Shook,* 599 P.2d at 1324.

The rule in this state is that the mere execution of mutual, reciprocal wills does not, in and of itself, prove the existence of an agreement between the testators. But such an agreement may appear by express reference thereto in the wills, or by inference.

*Matter of Estate of Bell,* 726 P.2d 71, 75 (Wyo.1986). In *Bell* the court quoted 1 Bowe–Parker: Page on Wills § 11.1, p. 544 (1960):

"The fact that joint wills and mutual wills are usually executed as the result of a common intention does not in any way mean that they are always executed pursuant to a contract between the parties respecting the making of such wills. * * * The sole fact, standing alone, that two wills were executed at or near the same time and bear similar provisions should in no way give rise to a presumption or an inference that they were made pursuant to a contract."

*Bell,* 726 P.2d at 75. In *Canada v. Ihmsen,* 33 Wyo. 439, 448, 240 P. 927, 929 (1925), this court said: "The great weight of authority is to the effect that mutual wills, made by separate instruments, do not afford sufficient evidence that the wills were made pursuant to a contract, and that, hence, if the contract is shown at all, oral evidence is necessary."

■ In *Bell,* 726 P.2d at 77 n. 1, the court noted it to be of interest that the Uniform Probate Code, § 2–701, 8 U.L.A. 155 (1983), provides:

"A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this Act, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and

extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills."

Proof that Caroline and Meritt Barton executed mutual and reciprocal wills does not make out a prima facie case that would defeat appellees' Motion for Summary Judgment. The wills alone do not prove an enforceable contract to make a will.

After Caroline died, Meritt revoked his 1977 will. He was free to do so. The general principles are set out in *Canada,* 240 P. at 928 (citations omitted):

Wills are, as courts express it, ambulatory in their nature; that is to say, revocable at the pleasure of the testator until his death. In the absence of a contract, there is nothing to hinder a testator of sound mind from changing his will as often as he pleases. At the same time a man may make a contract to leave his property by will in the same manner that he may make a contract to sell it. It is said that such contracts are not favored, and the courts generally hold, upon good reason, that they must be clearly shown in order to be enforceable. If, however, they can be shown in the manner required by law, and if, further, they are based upon a valuable and sufficient consideration, there is no particular reason, we apprehend, why such contracts should be held to be against public policy.

Appellant had the burden to prove that the 1977 will was irrevocable. In *Canada,* 240 P. at 929–30, the court said it is not enough to prove an agreement to execute a will:

In the case at bar there is nothing in the wills executed by either party to indicate that it is made pursuant to a contract. The wills are in the ordinary form. While, perhaps, the execution thereof about the same time, indicates that there was some sort of understanding between the plaintiff and the deceased, the exact nature of the contract is not thereby shown. It is not

impossible, or even improbable, that some conditions were attached to the contract. The decedent might have reserved the right to change her will upon change of circumstances, and the mere agreement to execute a will was not an agreement not to revoke it. We accordingly think that the wills alone are not sufficient memoranda to satisfy the statute of frauds.

Appellant does not contend that there is a written contract and that Meritt Barton and Caroline Barton executed their wills according to the contract. There is no correspondence or other written memoranda signed by one of the deceased which evidences the existence of a contract. Appellant claims that there was an oral agreement, but the record does not support this contention. Furthermore, the Bartons did not relate such an agreement to appellant or their lawyer. At best, an inference may be drawn from Meritt Barton's statements to appellant that the 1977 wills were executed according to a common scheme or plan. There is nothing to show an agreement that Meritt's 1977 will could not be revoked. The last question asked of appellant in his deposition was:

Q. In any of the conversations that you had with Meritt or Caroline, did either one of them ever talk about an agreement that they would not revoke the wills they made in 1977?

A. No, not as such specifically.

■ Appellant asserts the existence of a contract and he carries the burden of proving it. Evidence offered in proof of an oral contract to make a will must be clear and convincing. *Pangarova v. Nichols*, 419 P.2d 688, 695 (Wyo.1966). In *Slover v. Harris*, 77 Wyo. 295, 314 P.2d 953, 961 (1957) (citations omitted), the court described the required standard of proof:

Additionally, in a case on an oral contract to make a will, the party seeking to establish the contract has a heavy burden. In 94 C.J.S., *Wills* § 113(2), p. 868, the rule is stated:

"Courts accept with caution and examine with scrutiny evidence offered in support of a contract to make a

disposition of property of a deceased person different from that provided by law. * * * A high order of proof is required to sustain such contracts, and the claimant is held to a strict proof thereof, and the evidence must establish that the minds of the parties met on definite terms."

* * * In *Clark v. Clark*, 74 Utah 290, 279 P. 502, 504 [1929], the court said:

"The plaintiff, in declaring specific performance of an oral contract must establish the terms thereof with a greater degree of certainty than is required in an action at law, and he must show a clear mutual understanding and a positive agreement of both parties to the terms of the contract."

■ There is a lack of evidence in this case to prove that there was a contract as alleged by the appellant, and there is a failure to prove the terms of any such agreement. Appellant's testimony as to what Meritt Barton said is not enough. Considering his testimony in the most favorable light for appellant, Meritt simply said that he and Caroline made their wills together; that Sievers would get half of everything; and that Meritt Barton wanted to protect Marjorie and George. This evidence does not prove an irrevocable agreement. Furthermore, appellant's testimony as to what Meritt Barton said is not supported or confirmed by other evidence. Although Sievers' testimony may be admissible under W.S. 1–12–102, it cannot support a judgment without corroboration. *Consolidated Construction, Inc. v. Smith*, 634 P.2d 902 (Wyo.1981).

■ It is held in *Canada*, 240 P. at 929, that an agreement to devise real estate comes within the statute of frauds:

A will is considered in the nature of a conveyance by way of appointment. A devisee comes within the legal definition of one who takes by purchase, and the courts are nearly unanimous in holding, under statutes such as we have in this state, that an agreement to devise real property is within the statute of frauds, and must be in writing.

Wyoming's present statute, W.S. 1–23–105, is the same as W.C.S. 1920, § 4719, which was in force at the time *Canada* was decided. In pertinent part W.S. 1–23–105 provides:

In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

\* \* \* \* \* \*

(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year[.]

This court held in *Canada* that the execution of reciprocal wills is not sufficient memoranda to satisfy the statute of frauds. Appellant argues that the disclaimer signed by Meritt Barton satisfies the "note or memorandum" requirement, but he does not show the court how the "disclaimer" refers to such a contract. For this to be accomplished there would have to be some proof that the disclaimer was done to carry out or partly perform the alleged contract. To the contrary, the disclaimer was not consistent with what the wills provided. Under Caroline's will, all of her property was to go to Meritt. There was no provision for Sievers to get anything under Caroline's will if Meritt survived. The disclaimer by Meritt was a gratuitous act and does not support or corroborate the notion of a contract between Mr. and Mrs. Barton. The only evidence concerning the purpose of the disclaimer was the testimony of the Bartons' accountant and their attorney who testified that when the disclaimer was executed Meritt Barton simply said he wanted Sievers to have something out of his sister's estate. Appellant can only speculate that some other or different motive caused Meritt Barton to sign and file the disclaimer.

Clearly, Meritt Barton did not believe himself to be under any restriction as to changing his will. After his wife died, he made a new will which removed appellant as a beneficiary. In *Slover*, 314 P.2d at 962–63, this court set out the following principle:

In 94 C.J.S. Wills § 113(2), p. 870, it is stated:

"A will made in conformity with an alleged contract is strong confirmatory proof that such an agreement was entered into * * * but the subsequent execution of another will, not in conformity with the alleged contract, is strong evidence of the absence of such an agreement."

The summary judgment was properly granted.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

After summary judgment was granted instead of trial, this court is presented with a factual review to re-examine whether a conflict issue existed. Intrinsic to me is the concern which has been in part motivated by decisions of the United States Supreme Court, with which I do not agree, to move more case dispositions from live trial to papered presentation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this particularized factual case of a childless marriage, a large estate and reciprocal wills, conflict in concept reappears with summary judgment. Clearly, Meritt Barton and Caroline Barton, in joint endeavor in their attorney's office on August 23, 1977, intended to execute reciprocal wills so that each of them, with separate estates, would achieve a desired family division without regard for the happenstance of the first death between them.

Contorted in this litigation is whether their conduct was mutually considered and factually adopted for action as an agreement or, conversely, that Meritt Barton did not enter into any understanding as a joint plan for the future and was only humoring Caroline Barton until she signed her will

with mutuality to continue only until her then anticipated death. Normally, explicit notes of the scrivener-lawyer or explicit provisions in the will documents would have concluded the question one way or another. Unfortunately, that is neither the documentary result nor the factual record now presented for summary judgment. Maybe the questions were not asked; perhaps the answers were not given at will drafting and execution sessions. In any event, the instruments which were signed neither proved nor disproved a mutually adopted understanding between the husband and wife so that the testamentary beneficiaries and devisees were finitely established without difference as to who between them might first die.

What did happen is that Caroline Barton died and Meritt Barton changed his will to disinherit her relative after receiving her estate.

The circumstances of will execution and the identity of the results provided in consideration of their family status is evidence. I reject a legal conclusion from that evidence that Meritt Barton in effect did not intend to agree. Nothing as a matter of law convinces me that it was "King's–X, I did not mean it." This abbreviated factual record and totally inconclusive testimony from the third participant, the attorney who prepared the wills, does convince me that a proper trial, jury or bench, should be required for a factual decision, and the case should not be decided by an adjudication that no issue of fact exists. *See Cordova v. Gosar*, 719 P.2d 625, 636 (Wyo.1986). It is not, in my opinion, possible to accurately conclude that: (1) at least something less than a scintilla of evidence existed of Meritt and Caroline Barton's mutual agreement to be found from what they actually did; or (2) that reasonable minds cannot differ as to factual significance of what the parties actually did "mutually." *Weaver v. Blue Cross–Blue Shield of Wyoming*, 609 P.2d 984 (Wyo.1980). The legal standard that "[t]he motion for summary judgment should be sustained in the absence of a real and ma-

terial fact issue considering movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial," is not met by the factual ingredients of this reciprocal will case for proper disposition by summary non-trial adjudication. *Cordova*, 719 P.2d at 640.

Consequently, I dissent.