CALOGERO, Justice.
We granted writs in this case to review the trial judge’s granting a defense motion for directed verdict at the close of plaintiffs’ case in this judge tried lawsuit.[1] An accident with resulting property damage and personal injury occurred when plaintiffs’ automobile struck a cow on U.S. Highway 84, just outside of Winnfield, Louisiana on September 15, 1981.[2]
The pertinent contested issue was whether the defendant W.A. McCarty owned the cow. In this respect two distinct evidentia-ry matters have drawn the attention of the Court. What, if any, were the markings used by defendant on his cattle? And were defendant’s markings found on the cow which was killed in the automobile collision?
Defendant’s trial testimony indicated that at the time of the accident he maintained at least sixty head of cattle, which had access to grazing on the property adjoining the area of Highway 84 where the accident occurred. With respect to any identifying markings used by the defendant on his cattle, defendant testified that years ago he had a brand registered in Baton Rouge, which had long since expired, and a stock mark, recorded at the Winn Parish Courthouse about 1930, which he assumed was taken off the records since he had “quit marking.”[3] Defendant denied ever registering any other marks or brands or authorizing anyone else to do so on his behalf. However, defendant also testified that his son, Howard A. McCarty, his daughter, Geraldine Taylor, and his grand *632 sons “tend to” the cattle since he is no longer able to do so. In fact, he asserted that these relatives have an ownership interest in the cattle, which are not really considered “any person’s cows just ours.”
Plaintiff on the other hand, introduced a certified copy of a page from the Winn Parish Clerk of Court’s brand book, which bore an entry signed by Howard A. McCarty. The entry, recorded July 18, 1979, reported the identifying stock mark for the cattle of W.A. McCarty (defendant here) to be “Crop off Right Ear — Under-slope in Left Ear.”[4] While there may be no statutory requirement that such brand book be maintained by the parish clerk of court and no statute which, as in the case of the Livestock Brand Commission, La. Rev.Stat. 3:731 et seq., recites that a certified copy of a brand or mark registered under its provisions “shall be prima facie evidence of the ownership of the animal by the person whose brand or mark it may be,” (La.Rev.Stat. 3:743), nonetheless, the document is at least a written acknowl-edgement by Howard A. McCarty, defendant’s son, that the stock mark of defendant W.A. McCarty was as described. And there was no valid objection to its introduction.[5] Certainly, the brand book supports the conclusion that the defendant, or a member or members of his family marked or were to mark the “partnership ... cows” with a crop off the right ear and an underslope in the left ear.
Relative to the marks on the cow involved in the collision with plaintiff’s automobile, Trooper Cotton testified at trial that the markings consisted of “a crop on the right ear with a underslope on the bottom portion,” a single ear marking. His proffered accident report, however, described “a young heifer with a crop on right ear and an upper slope on lower portion of left ear,” a double ear marking. As concluded by the dissenting judge in the Court of Appeal, the description contained in the accident report essentially matched that filed relative to W.A. McCarty’s cattle in the Winn Parish brand book.[6]
Neither this accident report nor further testimony from the trooper to correct his original misstatement, however, was permitted in evidence. When counsel for plaintiff sought to clarify the trooper’s oral testimony, defense counsel's objection was sustained on the grounds that the questioning was repetitious. Furthermore, the trooper volunteered on cross-examination that his choice of words in the report in describing the cow’s identifying markings was aided by advice from a livestock officer. One Bill Barber recited to Trooper Cotton the words Cotton used in the report. Defense counsel objected to introduction of the report and to any further discussion of the accident report’s description of the cow on the grounds of hearsay and the stock patrolman’s not being called personally as a witness. The trial judge sustained the objection.
After disallowing introduction of the trooper’s accident report, the trial judge declared that the brand book Registration and the trooper’s testimony simply did not coincide, and thus, there was no evidence before the court that defendant owned the cow. While the judge excluded the report on the basis of the hearsay objection, he *633 may have been motivated at least in part by a belief that the trial testimony and the report were identical with regard to the description of the brand markings.[7] If that were his belief, or assumption, he was incorrect, for the report was distinctly different from the testimony. The Court of Appeal more than likely perceived the significance of the report to plaintiffs case, but affirmed the trial court’s exclusion nonetheless. They reasoned that the report did not qualify as past recollection recorded.
Upon our review of the law and the evidence, we conclude that the report should have been admitted. It does meet the requirements of the past recollection recorded exception. The elements to be considered in determining the admissibility of past recollection recorded include:
(1) the witness’s first hand knowledge of the event;
(2) recordation at or near the time of the event while the witness had a clear and accurate memory of it;
(3) lack of present recollection of the event;[8]
(4) the witness’s vouching for the accuracy of the report.
C. McCormick, Evidence 712 (2d ed. 1972). The Court of Appeal opinion rejected the past recollection recorded exception to the hearsay rule for the reason that the trooper, in their view, was unable to vouch for the accuracy of the description contained in his report because he was not conversant with the terms of livestock marking.
Although the trooper volunteered that “I wouldn’t know a crop from an upperslope or anything else,” he is certainly qualified to recognize whether a cow has markings on only one ear or on both ears. On redirect examination, he made it clear that he observed the cow and the markings. The trooper simply relied on the terms provided by an experienced stockman to describe the markings which the trooper himself observed. Trooper Cotton testified, “his terms and what I saw appeared to be the same.” Essentially, then, the trooper testified that he was reporting what he observed, but using the language or terms provided by the stock patrolman.
Even if the trial court’s exclusion of the report were justified by the imprecise argument which accompanied its tender the report should have been admitted when offered anew by the plaintiff after defendant, on cross-examination, again explored the matter of the accident report, its contents and its validity. On redirect, plaintiff was entitled to seek an explanation of statements elicited on cross-examination (La.Rev.Stat. 15:281), statements (or testimony) which confirmed that the substance of the report was an accurate recitation of what the trooper observed at the scene. At this point, the best evidence of what was in the report was the report itself, and the trial court should have permitted its introduction at that time.
We turn now to the law on the motion for directed verdict. Until 1977, the motion for directed verdict did not exist in Louisiana civil procedure. At that time, C.C.P. art. 1810 was added by 1977 La.Acts. 699. It provided:
Art. 1810. Directed verdicts
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is *634 not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
As enacted, however, C.C.P. art. 1810 did not appear to contemplate the use of a directed verdict in a non-jury trial. La.Act 156 of 1978 amended art. 1810 to provide for its use in just such a situation:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.[9]
In 1980, this Court adopted the following test in determining whether or not to grant the motion for directed verdict in a jury trial:
... could reasonable persons, reviewing all the evidence in light most favorable to plaintiff, have reached different eonclu-sions[?]. Breithaupt v. Sellers, 390 So.2d 870 (La.1980).
There has been no case in this Court’s jurisprudence addressing the rule or test for determining whether or not to grant the motion for directed verdict in a judge trial. At least two Court of Appeal decisions have addressed the issue. In Chandler v. Fuqua, 420 So.2d 1348 (La.App. 3rd Cir.1982) and Sevin v. Shape Spa, 384 So.2d 1011 (La.App. 4th Cir.1980) the Third and Fourth Circuits respectively concluded that the judge in a judge tried case may, like his federal counterpart, grant a directed verdict for a defendant at the close of plaintiff’s case, if on weighing the facts presented at that point, he would grant judgment for the defendant, and irrespective of whether plaintiff has presented a prima facie case (or some evidence as to each element required to be proved).
There are, however, contrary resolutions on this issue in the national jurisprudence. Tillman v. Baskin, 260 So.2d 509 (Fla.1972); Rogge v. Weaver, 368 P.2d 810 (Alaska, 1962); Arbenz v. Bebout, 444 P.2d 317 (Wyo.1968).
The Florida Supreme Court in Tillman v. Baskin, supra following the Alaska Supreme Court in Rogge v. Weaver, supra and citing the Wyoming Supreme Court in Arbenz v. Bebout, supra has rejected the resolution of the federal courts in the interpretation of the Federal Rule of Civil Procedure 41(B), the counterpart to Florida’s Rule 1.420.
The Florida Supreme Court stated:
Federal courts apparently feel justified in permitting their trial judges to weigh evidence following the presentation of a plaintiff’s prima facie case, because such a holding enables judges to “expedite the trial of cases,” and “dispose of cases at the earliest opportunity.” Bach v. Friden Calculating Mach. Co., 6th Cir.1945, 148 F.2d 407, 410. Their interpretation of the rule regarding involuntary dismissals, however, has not been universally accepted. Professor Roscoe Steffen of the University of Chicago Law School has called it “a misbegotten offspring of an unseemly desire for speed and hurry [which] has no place in our system of justice.” 27 U. Chicago L.Rev. 94, 125 (1959). The Supreme Court of Alaska also has rejected the federal interpretation, stating:
“Where plaintiff’s proof has failed in some aspect the motion should, of course, be granted. Where plaintiff’s proof is overwhelming, application of the rule is made easy and the motion should be denied. But where plaintiff *635 has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that in the latter situation the trial judge should follow the alternative offered by the rule wherein it is provided that he ‘ * * * may decline to render any judgment until the close of all the evidence’, and deny the motion. If, after denial of the motion, the defendant declines to present any evidence, the judge must, of course, then exercise his own judgment in applying the law to the facts presented and rule on the motion and decide the case.” Rogge v. Weaver, Alaska 1962, 368 P.2d 810, 813. Accord, Arbenz v. Bebout, Wyo.1968, 444 P.2d 317.
It is not necessary to the resolution of this case in its present posture to decide this issue. The trial judge’s grant of motion for directed verdict was prompted by an erroneous exclusion of the trooper’s report. Without the report there was no proof of any sort before the court that the markings on the dead cow corresponded with the identifying marks registered to the defendant in the Parish Brand Book. Therefore, the trial judge has not had the opportunity to apply either standard— whether “reasonable persons reviewing all the evidence in light most favorable to plaintiff [might] have reached different conclusions” or preponderance of the evidence — to the entire plaintiff’s case, including the trooper’s report. For this reason the trial court’s granting of the motion for directed verdict cannot be permitted to stand.

Decree

For these reasons we reverse the trial court and Court of Appeal judgments dismissing plaintiff’s suit with prejudice and remand to the trial court for resumption of trial.
REVERSED, REMANDED TO DISTRICT COURT.
DIXON, C.J., dissents with reasons.

. The Court of Appeal affirmed the judgment of the district court after appeal by plaintiffs. 445 So.2d 113 (La.App. 2d Cir.1984).

. Liability in this lawsuit was predicated on defendant’s alleged breach of R.S. 3:2803 and of Civil Code Articles 2315, 2316, 2317, and 2321. R.S. 3:2803 provides "No person owning livestock shall knowingly, willfully, or negligently permit his livestock to go at large upon the following public highways of the state: ... (10) U.S. 84 ... Jet. U.S. 71, at Clarence, to Jct.U.S. 65 at Ferriday.”

.A certified copy of the record indicated that the stock mark had been voided in June, 1979, by Aubrey McCarty, also known as Howard A. McCarty. Howard A. McCarty is W.A. McCarty's son.

. This stock mark was cancelled on November 25, 1981, by Howard A. McCarty, ten days after this accident occurred, according to plaintiffs exhibit #8, a certified copy of a page of the brand book, found on page 40 of the record.

. Counsel for defendant neither protested the form of the evidence (i.e., neither sworn testimony nor testimony in deposition form) nor that it constituted impermissible hearsay. He protested essentially that his client took issue with the substance of the offering, by stating
if he wants to introduce the document as being ... as being public records, that is fine. But the witness has already testified, you know, that he didn’t ... he didn't do that and he didn’t authorize the person who apparently did it to do it.
Defendant’s protest went not to admissibility but to the weight to be given the instrument in the trial court’s resolution of fact in the case.

.There is little difference between the brand book description of an "under slope in left ear” and the accident report description of an "upper slope on lower portion of left ear.”

. Testimony from the trial transcript included these comments by the judge:
And I asked the Trooper myself when he was on the stand if what he saw matched up with what he put on his report and he said it did. Same ear markings were in the upper and lower part of the ear. Even if I accept the full evidence of what cows Mr. McCarty owns from the brand registration or mark registration that is filed in evidence, they don’t match. Trial transcript at 112.

. This is the only requirement that might arguably be lacking in this case. As we review the testimony, however, it seems fairly clear that the trooper did not have present recollection but was reciting what he believed to be in the report, a belief that was mistaken.

. 1983 La.Act 534 transferred former C.C.P. art 1810 B so that it became art. 1672 B (in a chapter of the Code of Civil Procedure relative to Dismissal) since art. 1810 was included in the section of the code dealing alone with jury trials.