ARMSTRONG, Chief Judge.
| TPlaintiff-appellant, B. Samuel Company, Inc. (“Samuel”), appeals a judgment dated August 31, 2009, dismissing its claims pursuant to a Motion of Involuntary Dismissal filed by the defendant-appellee, Xavier University of Louisiana.
Samuel is a retail and wholesale distributor of building materials located in a warehouse at 939 South Jefferson Davis Parkway in New Orleans. The warehouse is bounded on three sides by the defen *561 dant’s property, including a Xavier dormitory.
Pursuant to Article 15.2.6 of the City of New Orleans’ (“City”) Comprehensive Zoning Ordinance (“CZO”), Xavier submitted a parking plan to the City in 2002 indicating that at least 225 parking spaces would be available for a dormitory to be built on the lot behind plaintiffs warehouse, the same dormitory referred to in the immediately preceding paragraph. The dormitory was built and the parking lot was made available.
Shortly after Hurricane Katrina, Xavier converted the dormitory parking lot into a FEMA trailer park, thereby substantially reducing the number of parking spaces available to Xavier students. Samuel contends that this puts Xavier out of 12compliance with the CZO. As a result, students began parking in freight zone areas as well as Samuel’s own parking lot.
Samuel contends that for the first week after school commenced, a campus security officer prevented students from parking illegally, but after that week the campus policeman ceased his efforts and the students recommenced their illegal parking.
As a result of the students illegal parking, Samuel alleges that it was forced to hire off-duty police officers to patrol the property at a cost of $1,300.00 per week, which Samuel includes as an item of damage in this suit which it filed on September 8, 2006.
Xavier filed exceptions of no cause of action and mootness, which were denied. Xavier’s application to this Court for writs was denied.
A judge trial ensued.
The trial judge noted in his written reasons for judgment that Mr. Barry Samuel, the president and owner of the plaintiff company, testified that the conversion by Xavier of the student dorm parking lot into a FEMA trailer park resulted in a reduced number of parking spaces, causing people to illegally park in the .freight zone areas adjacent to his business and also in his business parking lot.
However, the trial judge also noted that Mr. Samuel,
“admitted that it was both students and non-students illegally parking. Further, he testified that there were missing no-parking signs in the area that had not been replaced by the City.”
Mr. Samuel testified that there' were missing “no parking” and “freight zone” signs. The significance of the missing signs is that there was no notice to people I ¡¡that they should not park in certain areas, thereby contributing to the parking problems in the area.
Ultimately, the trial court found that the plaintiff “failed to establish ... a causal connection between the presence of FEMA trailers in a University parking lot and the choice of individual third party individuals to violate the law by parking illegally.”
Mr. Samuel testified that after the campus security officer stopped preventing the students from parking illegally:
“Everybody was stopping or parking or blocking the driveway, waiting for somebody to come out the dormitory or parking on the corner too close to the corner. Nobody could turn.”
Mr. Samuel testified that-in total he paid $52,000.00 for police details to control the parking over a 40-week period.
Mr. Samuel testified that the volume of his business increased after Hurricane Katrina and he did not attempt to show that the parking problems resulted in an economic loss to his company other than the $52,000.00 expense that was incurred by the company for private detail police officers needed to supervise the parking.
*562 Mr. Samuel testified that he filed no complaint with the Director of Safety and Permits concerning the failure of Xavier to live up to what its student parking obligations allegedly were. Mr. Samuel testified that he invoked no legal process to prevent Xavier from utilizing the parking lot for FEMA trailers. Mr. Samuel explained:
First of all, my attorney’s office was inundated with water. I didn’t have an attorney to go to.... The courts weren’t open to file such action. They said that they opened in Gonzales. Then they moved to Baton Rouge. ^You’re asking me to file a lawsuit when I’m trying to clean my business up.
Mr. Samuel also admitted that he had been complaining about parking issues long before the parking lot was utilized by FEMA trailers.
Mr. Samuel complained about an altercation he and his son had one day with a man blocking his driveway, but when asked on cross-examination if he knew whether the gentleman was a Xavier student, he responded: “I know that he wasn’t.”
Mr. Samuel also admitted that none of the vehicles that blocked his driveway were owned by Xavier. He further admitted that the people who parked in his driveway and freight zone did so illegally and he felt that they knew that they were doing so illegally. He admitted that his own customers sometimes blocked the street.
Mr. Samuel had no receipts to show what the detail officers were paid (he testified that they were all paid in cash) and the expense was not shown on his originally filed tax return. After this litigation arose, Mr. Samuel amended the company return to show the expense.
Lieutenant Timothy Morris of the New Orleans Police Department testified that he supervised the private detail for Mr. Samuel[1]. He testified that the people parking in the freight zone were inhabitants of the Xavier dorm, so he assumed they were Xavier students. He supported Mr. Samuel’s testimony about paying the officers working the detail in cash. He received $1,300.00 per week from Mr. Samuel which he in turn distributed to the officers working the detail. As this ^testimony is uncontradicted, at this stage of the proceedings we will accept it at face value.
At the conclusion of Lieutenant Morris’ testimony, Xavier moved for a “directed verdict” (involuntary dismissal) on the grounds that: (1) Samuel could take steps to enjoin or restrain Xavier from utilizing the parking lot in a manner inconsistent with zoning requirements, although it appears that by the time of this litigation, the use of the parking lot for FEMA trailers had ceased; (2) Mr. Samuel testified that even before he hired the police detail, he was successful in calling the City and having vehicles towed. Xavier further noted that Lieutenant Morris called the City and had vehicles towed, the same procedure employed by Samuel prior to hiring the detail and Lieutenant Morris explained that the City was very responsive. Therefore, Xavier contends that there was no reason to hire the detail; and (3) lastly, the illegally parked cars were not owned or operated by Xavier and that while some of the illegally parked cars may have been owned by Xavier students, others clearly were not. Xavier contended that it could not be held liable for students who may have parked illegally — that the students who may have done so were responsible for their own acts in that regard.
*563 Xavier also argued that there is no case in Louisiana that awards damages for a zoning violation for non-physical damages.
The plaintiff cites Varnado v. Southern University at New Orleans, 95-2619 (La.App. 4 Cir. 5/1/96), 673 So.2d 1289, in support of its argument that Xavier is liable for damages arising out of the use of its parking lot for FEMA trailers in violation of zoning requirements. In Vamado, this Court held Southern University of New Orleans (“SUNO”) liable for damages incurred when SUNO allowed students to use as a parking lot, property zoned residential, the only practical 16access to which was over the plaintiffs private drive. As a result students were using the plaintiffs private drive and causing damage to his property as they did so. Between 100 and 150 cars per day were using the plaintiffs private drive. SUNO’s operation of the illegal parking lot was the direct cause of damage to and interference with the enjoyment of the plaintiffs property.
The first important distinction to note between Vamado and the instant case is that in Vamado the plaintiffs property suffered economic damages, but in the instant case no physical damage is claimed by the plaintiff. Also, in Vamado the plaintiff sought and was granted injunctive relief in aid of her claim, but the plaintiff in the instant case has sought no such relief.
Xavier argues that there is no ease of association between the temporary use of the parking lot for FEMA trailers and the inconvenience caused by people parking illegally in proximity to the Samuel company. In PPG Industries, Inc. v. Bean Dredging, Inc., 447 So.2d 1058 (La.1984), the Louisiana Supreme Court stated that we should consider “the moral, social and economic values involved, ... with a view toward the ideal of justice.” In applying this standard, Xavier argues that this Court should take into account the unprecedented nature of the Katrina disaster in considering the temporary use of the parking lot for FEMA trailers. (It is undisputed that the lot is no longer used for FEMA trailers.) As we noted earlier in this opinion, when asked why he had never sought injunctive relief, Mr. Samuel explained that the disruptions caused by Katrina to the legal system, to his attorney and to his business made such efforts impracticable, thereby, in effect, admitting that Katrina devastation created extraordinary circumstances. Therefore, we find that under such extraordinary circumstances, the temporary use of the parking lot for FEMA trailers was reasonable. We might add, that based on Mr. Samuel’s own 17testimony, it would appear that because Samuel’s business dealt in materials that were employed in the Katrina recovery efforts, Samuel saw his business increase dramatically after Katrina and he has claimed no damages for loss of business.
In Varnado, SUNO effectively and actively encouraged and promoted trespass upon the plaintiffs property, implying that it was appropriate to do so. Nothing Xavier did in the instant case implied that it approved of its students parking illegally. There was also the matter of lack of “no parking” and “freight zone” signage, but that was the City’s responsibility, not Xavier’s. Finally, based on the testimony in the record, one can only conclude that a substantial number of those persons parking illegally were not Xavier students at all.
The plaintiff further complains that the trial court erred in granting Xavier’s motion for involuntary dismissal at the close of plaintiffs case, citing Anderson v. McCarty, 462 So.2d 630, 634-35 (La.1985) for the proposition that,- under 1672B, the trial court should have waited until the *564 close of all the evidence before rendering a decision. Anderson is inapplicable. In Anderson the Louisiana Supreme Court reversed the granting by the trial court based on findings that the plaintiff had presented a prima facie case and, perhaps more importantly, that the dismissal was based on the erroneous exclusion of certain evidence. In the instant case the plaintiff does not base this appeal on allegations that any of its evidence was improperly excluded.
Generally, the standard for granting an involuntary dismissal in the defendant’s favor is much lower than the standard for granting a directed verdict. State in the Interest of Joseph, 97-0780, p. 6 (La.App. 4 Cir. 12/23/97), 705 So.2d 776, 782. The trial court is required to consider the evidence in the light most favorable to the plaintiff when deciding a motion for directed verdict, while it is required to evaluate the evidence without |sapplying any special inferences in favor of either party in a motion for involuntary dismissal.
Falgout v. Louis-Jeune, 00-2452, p. 9 (La.App. 4 Cir. 10/3/01), 799 So.2d 610, 616. See also Morgan v. City of New Orleans, 94-0847 (La.App. 4 Cir. 12/15/94), 647 So.2d 1308.
In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence.
Thornton ex rel. Laneco Const. Sys., Inc. v. Lanehart, 97-2871, p. 4 (La.App. 1 Cir. 12/28/98), 723 So.2d 1127, 1130.
Finally, the plaintiff states in its brief that the grant of an involuntary dismissal is subject to manifest error review, citing, Broussard v. Voorhies, 06-2306, p. 3 (La. App. 1 Cir. 9/19/07), 970 So.2d 1038, 1041.
Therefore, taking all of the testimony of the plaintiffs two witnesses at face value, we find that the trial court committed no error in granting the involuntary dismissal and that there was no manifest error in the trial court’s implicit finding that the plaintiff failed to establish its claim by a preponderance of the evidence.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Lieutenant Morris was the only witness other than Mr. Samuel to testify.